MARY P. RISLEY, ALSO KNOWN AS MAI P. RISLEY, PLAINTIFF-APPELLANT, v. ELWOOD F. KIRKMAN, INDIVIDUALLY AND AS EXECUTOR UNDER THE WILL OF A. SHERWOOD RISLEY, DEC'D; SHERRY'S MOTEL, INC., A CORPORATION OF THE STATE OF NEW JERSEY; AND PINE-HYTTEN, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued May 5, 1970—Decided July 10, 1970.

466

*Mr. Marvin D. Perskie* argued the cause for appellant (*Mr. Alfred C. Clapp,* of counsel; *Mr. Solomon Friss,* on the brief; *Mr. Patrick T. McGahn, Jr.,* attorney).

*Mr. John R. Armstrong* argued the cause for respondents (*Messrs. Kirkman, Mulligan, Bell and Armstrong,* attorneys).

PER CURIAM. This action was brought by the widow of A. Sherwood Risley principally to obtain his estate from defendant Elwood F. Kirkman, the sole beneficiary named in Risley's will, and alternatively to have the estate held in trust for her. She sought also to establish a dower interest in the home she occupied on Verona Avenue, Pleasantville, and also in real property owned by two corporations of which Risley was the stockholder. Kirkman acknowledged an obligation orally undertaken with Risley to provide for his widow for her life. Kirkman agreed too that the widow held a dower interest in the home. The trial court found that the gift to Kirkman was not the product of undue influence or any other wrong, but found Kirkman's obligation to support the widow was more expansive than Kirkman claimed. As to the question of dower, the trial court found she had no dower interest except in the home she occupied and is entitled to occupy for life under the oral agreement between Risley and Kirkman. The trial court denied counsel fees and costs to the widow.

We certified her appeal before argument in the Appellate Division. Except in the respects to be mentioned, the trial court's disposition of the matter was clearly correct.

The situation is quite unusual for the sole beneficiary was the decedent's attorney and the will was drawn by a partner of the attorney. There having been this confidential relationship and the disposition seeming on its face to be unnatural, the trial court placed the burden of proof upon Kirkman. The facts make it evident that the selection of Kirkman as beneficiary was the testator's independent decision and that to grant the relief the widow sought would have defeated the testator's plain intention.

The Risleys were married in 1908. After a few years Risley became interested in other women. In 1944 he started to see Hilda Birdsall, and in 1949 he left the marital home, never to return. He shared an apartment with Mrs. Birdsall at the time of his death. Nonetheless Risley always recognized his obligation to support his wife, and did support her at a modest level of which she apparently did not complain.

The record is clear that although Risley wanted his wife to be supported after his death, and indeed that this was his persistent, central purpose, he was equally adamant that the principal of his estate should not go to her. They had no children, and presumably Risley had no desire to provide for his wife's kin or any of his own, if he had any. This is evident from the fixed pattern of a series of wills under which the ultimate beneficiaries, after Mrs. Risley's needs were met, were business associates or friends to whom Risley felt attached.

The wills just mentioned are four in number and were all drawn by Kirkman's firm. By the first will, dated October 3, 1947, Risley conveyed everything to Virgil M. Conover, his then business associate, and to Kirkman, in trust, however, to pay the net income to Mrs. Risley during her life, the corpus to go upon her death to Conover, and if he should not be alive, then to Walter Mockel, a faithful yard employee of Risley's lumber company. Under the second will, dated August 30, 1950, Conover and Kirkman were again trustees, and Conover and Mockel were again

the remaindermen, but the lifetime interest of Mrs. Risley was stated to be $50 per week from net income, a right to occupy the home on Verona Avenue, and to have paid "all maintenance, costs, charges and repairs for said home." The third will, dated October 15, 1953, provided for Mrs. Risley on the same terms, but there was an immediate gift to Kirkman of all of Risley's shares of stock in two corporations, subject to Mrs. Risley's use of the Verona Avenue home, the corpus of the trust to go to Conover on Mrs. Risley's death, and if Conover should not be living, then to Kirkman. The fourth and final will, dated September 17, 1954, left everything to Kirkman. Discord had developed between Risley and Conover, and this will was made two days after Risley had sold his interest in the lumber company to Conover. This will remained unchanged although Risley lived another twelve years.

It is obvious from the foregoing account that Mrs. Risley could not gain the corpus if the last will were found in its entirety to be the product of undue influence, for unless all of the wills could thus be disposed of, someone else stood to take. Hence her attack was not upon the will itself but upon the gift to Kirkman, either to have him declared a constructive trustee for her benefit or to have the gift to Kirkman fail to the end that the gift, consisting of the entire estate, might pass by intestacy. But there is no basis whatever to say the testator intended his widow to take all and that Kirkman intercepted it. On the contrary, it would have been repugnant to Risley's consistent purpose that his widow be cared for during her life but that the remainder go to others he chose to be his ultimate beneficiaries. The trial court correctly refused to frustrate the testator's intent.

We are however troubled that the last will, unlike the prior ones, did not spell out, or even mention, the widow's lifetime interest. That Risley had implicit faith in Kirkman, we do not doubt. The record makes this abundantly clear. Nor do we doubt that Kirkman's partner who drew

the will suggested to Risley that he seek independent advice and that Risley, a confident and positive individual, rejected the suggestion in strong terms. Nonetheless Kirkman could have handled Risley, and when Risley charged him orally with the obligation to support Mrs. Risley for her life, Kirkman should have urged Risley to state that obligation in the will itself and to consider the advisability of a trust and of an independent trustee. But to deny wholly the gift to Kirkman on that account would be punitive and would as well violate the clear intent of Risley. Rather equity should fashion a remedy to fit the case.

As to this, the trial court said:

In view of the peculiar circumstances of this case, I feel it imperative to state, lest it be misunderstood, that a formal trust has not been and need not be established. This court, retaining jurisdiction as it does, may at some future date, when and if such need arises, formalize defendant's duties by creating a trust. Such trust as may be created would not arise as a result of any wrongdoing on defendant's part in his relationship with Risley and the drawing of the will. Rather such trust would arise solely out of the promise Kirkman made to Risley that he would support Mrs. Risley in the manner above described.

We cannot know whether Risley, adequately informed, would have elected a trust, or a charge upon the gift to Kirkman, or would have been content with Kirkman's unsecured promise. We think that because of Kirkman's failure to inform Risley upon this subject, the equitable course is to give Mrs. Risley the maximum security, namely, the security of an actual trust.

In this connection, we agree with the trial court's statement of the dimensions of Mrs. Risley's rights:

There is, however, a difference of opinion as to the terms of the agreement. Kirkman asserts that legally he has no obligation except to suitably maintain the Verona Avenue house in which plaintiff resides, and to pay to plaintiff precisely that which Risley was paying to her each week. Through counsel he expressed to the court an intention to act reasonably beyond the scope of the obligation he con-

ceives that he assumed, should circumstances so warrant. On the other hand there were expressions by the testator which tend to establish that he expected his widow to receive more than that which Kirkman understands was intended.

Resort to other evidence is helpful. Conover had testified that he had been asked by Risley to give Mrs. Risley $50 per week. The earlier wills stated she was to get $50 per week. Risley had told his wife, when he called her from the convalescent home, that if she needed anything to call on Kirkman. In the light of Risley's actions concerning his wife, I find that if she had had any special financial problem she could have looked to him for help over and above that which he ordinarily supplied for her current needs. Indeed, as her husband, he was legally obliged to furnish necessaries or their equivalent. *Saks & Co. v. Bennett*, 12 *N. J. Super.* 316 (App. Div. 1951) ; 10 *N. J. Practice*, *Herr-Lodge*, (Marriage, Divorce and Separation), Sec. 392, p. 309 (1963).

In view of this it can be assumed that Kirkman was expected by Risley to meet her reasonable requirements just as he probably would have done. And this would include requirements necessitated by inflation and increased living expenses. There is no method of foreseeing or predetermining what her future needs will be.

I find that the agreement between Kirkman and Risley contemplated the payment of $50 per week[1] to Mrs. Risley instead of $35 per week, in addition to the proper maintenance of the house. She will also be entitled to reasonable medical, hospital and allied expenses. The court will retain jurisdiction to entertain applications in the future for reasonable financial aid to or for plaintiff in the event that it should be refused by Kirkman.

Since those needs cannot now be estimated, we think Mrs. Risley is entitled to have the entire estate held in trust by Kirkman during her lifetime to meet her needs, and since there may be a conflict of interest between Kirkman and Mrs. Risley with respect to her needs, there should be a cotrustee, of the court's independent selection, to serve with Kirkman. If income is inadequate to meet Mrs. Risley's needs, the corpus shall be used. Kirkman may receive the surplus income and, of course, will receive the corpus upon her death. The trustees may be given broad powers with respect to retention or sale of assets, in harmony with the provisions of the earlier wills in which the

---

[1]Mrs. Risley offered no evidence as to her present actual needs and did not challenge this figure on appeal.

trust device was used. With respect to actions, if any, heretofore taken by Kirkman which exceed the authority of a trustee, equitable adjustments, in the light of the purpose of the trust and Mrs. Risley's advanced age, should be made. Upon remand, the judgment shall be modified accordingly.

■ With respect to the subject of dower, we agree fully with the trial court's dispositions.

■ The remaining issue relates to counsel fee. The trial court deemed the case to come within the basic rule that each litigant shall bear the burden of the pursuit of his own interests. *R.* 4:42–9. Insofar as Mrs. Risley sought to defeat the gift to Kirkman, this was the case. But we have concluded that an actual trust should be found with respect to the lifetime interest Risley intended for her, and in that aspect of the case it is consonant with our principles to charge against the corpus of the trust the expenses incurred in establishing its terms. We think the situation in principle is the same as the more familiar case in which a disputed will is offered for probate. There allowances may be made out of the estate, *R.* 4:42–9(a)(3). Here it equally serves the will and intent of the testator to establish the terms of the trust.

It is true that Kirkman informed Mrs. Risley of his obligation immediately after Risley died, and acknowledged it also to Mrs. Risley's then attorneys. Indeed Kirkman performed his obligation according to the terms as he claimed them to be for almost two years before present counsel instituted this action, we gather without a prior demand. But Mrs. Risley was entitled to have an actual trust settled as precisely as could be, and this, we must conclude, the testator would also have wanted, had he been suitably advised with respect to the subject. To require the widow to bear the cost of establishing the trust and its terms would, on the facts of this case, run against the very purpose of the trust, *i. e.*, the fulfillment of the testator's primary aim that her actual needs be met. The allowance, however, must be confined to so much of the services as are fairly allocable

to this facet of the case alone. Upon remand, an application for allowances may be made in harmony with these views.

The judgment is modified in the respects stated in this opinion, and so modified, is affirmed.

*For modification*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL and SCHETTINO—5.