**ESTATE of Grace L. CAMPBELL, Dec'd,
James A. Campbell, II and Martha C.
Hookway, co-executors, Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 76–949.**

United States District Court,
D. New Jersey.

Oct. 12, 1977.

Cohen, Carles & Poe, Newark, N. J. (Thomas S. Carles and Martin D. Cohen, Newark, N. J., appearing), for plaintiffs.

Jonathan L. Goldstein, U. S. Atty., Newark, N. J. (George E. Mittelholzer, Asst. U. S. Atty., Newark, N. J., appearing), Myron C. Baum, Acting Asst. Atty. Gen., Jerome Fink and Stephen T. Lyons, Attys., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

BIUNNO, District Judge.

This is a suit for refund of federal estate tax in connection with the estate of Grace L. Campbell (Grace) who died in 1973. The major item claimed will be controlled by the question whether the assets of a trust established by the will of her father, William H. Lummis, with a power of appointment in Grace, are to be included in the determination of her federal estate tax.

As is well known, the assets comprising the estate of a decedent for the purpose of probate administration under the law of the State with jurisdiction are not necessarily the same as the assets which must be reported as part of the gross estate for federal estate tax purposes.

A common example is the estate by the entirety. Land conveyed by deed to spouses to create such an estate does not pass to a surviving spouse by virtue of the will of the deceased spouse, or by the intestacy laws in case there is no will, because title is derived by virtue of the deed itself. The same is true of joint tenancies with right of survivorship in either real or personal property.

In both examples, the title or ownership of the surviving tenant is not part of the probate estate of the tenant who dies first. In each case, the interest that exists while both live comes to an end with the death of one, who, for failure to survive, has no further claim to or interest in the property. The theory is that during the common lifetimes, each tenant has hold of a handle of the property. With death of one, he no longer holds a handle while the survivor continues to hold his. Nothing is transferred in the contemplation of property law or of probate law.

In applying tax laws, whether State or federal, these property concepts do not necessarily apply, and provisions of the tax laws reflecting different concepts of legal theory can control.

The facts in the present case are not complicated. Lummis made a will in 1933 and died in 1940. He was survived by his widow, Gertrude, and three children, William, Robert and Grace. He left the residue of his estate in trust to provide for Gertrude for life. At her death, what remained was to be divided into four parts.

One part was to be distributed as directed by Gertrude under power of appointment as exercised by her will or, if not exercised, then in equal shares to William, Robert and Grace per stirpes.

Each of the other three parts was to be held in trust, to pay income to each of William, Robert and Grace and on the death of each to pay the principal as directed by power of appointment as exercised by the will of each or, if not exercised, then to that child's issue per stirpes.

In early 1971, Grace executed a will, and died in early 1973 leaving two children, James and Martha, who were also named co-executors. The residuary clause in Grace's will gave the residue of her estate, "including any property over which I may have any power of appointment" to James and Martha or their issue per stirpes.

Thus, Grace's designation under the power of appointment was of the same beneficiaries (James and Martha) who would have received her share of the Lummis trust, so far as shown by the facts presented, if she had not exercised the power.

Under New Jersey law, property received through the exercise of a power of appointment passes directly from the estate of the person who created the power (here, Lummis) to the beneficiaries designated without becoming part of the probate estate of the person who exercises the power (here, Grace). This is not the same as the treatment under the federal estate tax law.

By 26 U.S.C. § 2041(b)(3), a power of appointment created by a will executed on or before October 21, 1942 is considered to be created on or before that date even though the testator does not die (to give the will effect) until after that date, so long as the death occurs before July 1, 1949 without having republished the will by codicil or otherwise after October 21, 1942. In this case, both the date of execution of the Lummis will (1933) and the date of death (1940) preceded October 22, 1942, and so the treatment of the power and its exercise is that provided for powers created on or before October 21, 1942 (a "pre-October, 1942" power).

Under the federal estate tax law, 26 U.S.C. § 2041(a)(1), the gross estate of a decedent (here, Grace) is to include the value of property with respect to which decedent, by will, exercised a "pre-October 1942" general power of appointment. Failure to exercise the power or the complete release of the power is not to be deemed an exercise of the power. The rules applying to powers created after October 21, 1942, 26 U.S.C. § 2041(a)(2), are different and are not involved here.

The power created by the Lummis will placed no restrictions on who might be designated as beneficiary, and so it was a general power of appointment coming within the definition of 26 U.S.C. § 2041(b)(1) as a power exercisable in favor of the decedent, his estate, his creditors or the creditors of his estate.

On the face of the basic facts recited, it is plain that the property in the Lummis trust, passing to James and Martha through Grace's exercise of the power of appointment, is part of Grace's federal gross estate, and its inclusion resulted in additional estate tax.

The claim for refund is made, and the suit is here, based on the proposition that Grace probably had no intent to exercise the Lummis power of appointment, and so this court should construe Grace's will as not having exercised the power in accordance with that "probable intent", relying on such New Jersey decisions as *Bank of New York v. Black*, 26 N.J. 276, 139 A.2d 393 (1958); and later cases in the line.

The facts relied on are set out in a stipulation of facts and documents, and in affidavits proffered by plaintiffs which are taken as true for the purpose of the cross-motions. Grace's children say they were never aware of the existence of the power and, judging from their conversations with Grace she was not aware of it. They first learned of it a year after her death when the point was raised by IRS. Grace is described as a frugal person, willing to pay any tax due but desirous of saving taxes legally. They consider it inconceivable that Grace would have exercised the power when its only effect was to incur an additional tax.

They also say that on receiving their shares of the Lummis trust, they assumed it was pursuant to the Lummis will, and not because of anything done by Grace. The trustee bank officer says he received a copy of Grace's will from Martha's husband, had an accounting prepared and approved, and distributed the trust corpus to James and Martha under the Lummis will.

An accountant who prepared Grace's returns for 12 years says she would send him tax information on the basis of which he prepared returns, and that from his conversations with her it was clear she was concerned about paying any more taxes than necessary.

The lawyer who drew Grace's will says he had not known her before. Her basic object was to provide equally for James and Martha while keeping taxes to a minimum. There were three or four conferences before the final draft (the will discloses an arrangement for the stock in a family printing company to end up in James, with a cash adjustment to equalize Martha's share). He tried to get complete information about Grace's assets, but nothing she said gave any inkling that she had a power of appointment. If he had any notion that there was a "pre-October, 1942" power, he would not have allowed the use of the language exercising all powers. He included the provision in the residuary clause to in-

sure that anything Grace might acquire in the future would go equally to James and Martha, thus avoiding the need to make another will. Grace had difficulty grasping legal language and he doubts she had any idea what a power of appointment is, or that she had one.

The doctrine of "probable intent" as used in New Jersey allows testimony to be received outside the will to an extent well beyond what could be offered under prior law. The testimony includes circumstances and relationships, the draftsman's file notes and recollections, declarations of testator's intent, and the like. These materials along with the will itself, are considered together to determine the "probable intent". It is not necessary for the question to arise on the face of the will. The burden of persuasion is a preponderance; but see N.J.S.A. 2A:81-2, which appears to require clear and convincing proof, and N.J.S.A. 3A:3-2, requiring wills to be in writing.

In any event, as shown by the decisions to be listed, the Supreme Court of New Jersey has applied the doctrine to add a provision exercising a power of appointment, to delete an express provision excluding an *inter vivos* trust from the calculation of a marital share, and to redraw a residuary clause outside statutory limits to deal with a contingency that occurred a few years after the will was made but some 6 years before testator's death, among others.

It may be said that about the only things not done by application of the doctrine are (1) to find valid a will which it was the probable intent of a decedent to make, though he died intestate; and (2) to find intestacy of a decedent dying with a will which it was his probable intent to revoke.

Some of the cases speak of the natural purpose to minimize taxes as a factor to be considered, and no doubt it is. However, in every case where the doctrine has been applied, the dominant theme has been to decide testator's intent or plan for how the estate was to pass; should it go to A or to B; or, what should be their shares? The effect of taxes has been an incident, or a consequence, of such fundamental results,

even though taken into account in selecting a given result. No case has been found where the property would pass to the same beneficiaries and in the same shares, whether the doctrine was applied or not, and where the only effect of applying the doctrine is to reduce death taxes. This is such a case.

The first suggestion that the doctrine be adopted in New Jersey was the dictum in Judge Clapp's concurring opinion, *In re Klein's Estate*, 36 N.J.Super. 407, 116 A.2d 53 (App.1955). Supreme Court decisions on the subject after that are: *Bank of New York v. Black*, 26 N.J. 276, 139 A.2d 393 (1958); *Fidelity Union Trust Co. v. Robert*, 36 N.J. 561, 178 A.2d 185 (1962); *In re Cook*, 44 N.J. 1, 206 A.2d 865 (1965); *In re Estate of Burke*, 48 N.J. 50, 222 A.2d 273 (1966); *Gesner v. Roberts*, 48 N.J. 379, 225 A.2d 697 (1967); *In re Estate of Conway*, 50 N.J. 525, 236 A.2d 841 (1967); *In re Thompson*, 53 N.J. 276, 250 A.2d 393 (1969); *Chase Manhattan Bank v. Mitchell*, 53 N.J. 415, 251 A.2d 128 (1969); *Surina v. Gilbert*, 54 N.J. 68, 253 A.2d 465 (1969); *Risley v. Kirkman*, 56 N.J. 464, 267 A.2d 50 (1970); *Wilson v. Flowers*, 58 N.J. 250, 277 A.2d 199 (1971); *In re Estate of Munger*, 63 N.J. 514, 309 A.2d 205 (1973); *In re Estate of Ericson*, 74 N.J. 300, 377 A.2d 898 (1977); and *Engle v. Siegel*, 74 N.J. 287, 377 A.2d 892 (1977). There may be others.

As is plain from a reading of these cases, and stated explicitly in some of them, no result arrived at by the application of the doctrine is to have any force as precedent in later cases. The decisions are necessarily *ad hoc*, being concerned with the probable intent of a specific testator in light of the record of evidence in his case. Thus, it cannot be argued that because the court wrote in a clause exercising a power of appointment in *Bank of New York v. Black, supra*, or because it deleted an explicit provision in *Ericson*, supra, it would strike out or modify the statement exercising powers of appointment in Grace's will. Those cases are not precedent, and no attempt to reconcile them would be useful. Despite *Wilson v. Flowers*, supra, it is not prudent to make

"philanthropic" gifts if gifts to charity are intended.

In considering matters of state law such as this, the function of the federal courts is to assess that law as determined by the highest court, or estimating what that court would rule. The federal court sits as though it were a state court. *Morgan v. Comm'r,* 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); *Guaranty Trust v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Bernhardt v. Polygraphic, etc.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Comm'r v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Peoples, etc. v. U. S.,* 412 F.2d 1156 (CA–3, 1969).

In the first place, this case and the questions it presents could never reach a state court. There are no adversary parties to advance claims for different distributions or shares. The only adversary here is the United States, and it cannot be made a party in a state court without its consent. *Minnesota v. U. S.,* 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939); *Stapleton v. $2,438,110.,* 454 F.2d 1210 (CA–3, 1972).

If the matter influenced state death taxes, there could be a state court case with the tax authorities joined, as in *In re Benner,* 152 N.J.Super. 435, 378 A.2d 34 (App. 1977). But the state law taxing property under power of appointment is different than the federal law. The property subject to the power is taxed once only, as part of the estate of the creator of the power. See, N.J.S.A. 54:34–1, and N.J.A.C. 18:26–5.12. And so, the case could not arise on that issue.

Nor could the case arise in regard to the calculation of commissions payable to fiduciaries. It has long been the law of New Jersey that property passing under a power of appointment goes directly from the estate of the creator of the power to the beneficiary selected by the donee of the power. It is as though the creator of the power drew his will with blank spaces to be filled in by his agent, the donee of the power. *Crane v. Fidelity Union, etc.,* 99 N.J.Eq. 164, 133 A. 205 (Ch.1926); *Seward v. Kaufman,* 119 N.J.Eq. 44, 180 A. 857 (Ch.1935).

■ These problems aside, it is estimated that the Supreme Court of New Jersey would not apply the doctrine of probable intent to delete or modify the exercise of the power in this case. The evidence presented clearly shows that Grace's dominant plan was to benefit James and Martha equally with everything she owned or controlled. Accepted as true, it shows she was unaware of the power under the Lummis will. Given that, it is obvious that she was unaware as well of any gift over on failure to exercise the power. There may have been no gift over, as in *Bank of New York v. Black,* supra, leaving the corpus to pass by intestacy of Lummis. There may have been a gift over to others than James and Martha, or to a group including them but with lesser shares.

Thus, there was no "unforeseen" contingency. There was a lack of information about existing facts. Had those facts been ascertained, no doubt the draftsman would have phrased the exercise of the power in a way to exclude the one created by the Lummis will. But, since Grace did not know whether she had a power, or where the property would pass if she failed to exercise it, the only way she could be sure that everything would pass to James and Martha was to make the will she did. It does not frustrate her probable intent even though there be a price to pay for lack of existing information. Her intent, whether subjective or objective, was achieved.[1]

Putting it another way, if the trust assets would have gone other than to James and

1. The New Jersey courts, in developing and applying the doctrine of probable intent, seem not to have considered the question whether, in a case like this where a power of appointment is involved, the probable intent of the decedent who created the power should be the focus of the inquiry, or at least a factor to be taken into account. The question is implicated because of the local probate rule that property passing through a power of appointment passes directly from the first testator to the final recipient without becoming part of the estate of the one who exercised the power.

Martha in the absence of an exercise, the facts presented here would have made a strong case for asking a state court to rule that a general residuary clause should be read as including an exercise of the power, as was done in *Bank of New York v. Black, supra.*

The same result is reached by the application of federal law. At one time, the additional tax on Grace's estate could have been avoided without reliance on the doctrine of probable intent. Under *Helvering v. Grinnell,* 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825 (1935), Grace's exercise of the power might have been regarded as a mere echoing of the gift over under the Lummis will, and hence not an actual exercise of the power. And, see *Rogers v. Helvering,* 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134 (1943), distinguishing *Grinnell* on the ground that the exercise of the power there did not exactly echo the existing gift over.

Since then, by virtue of Regs. § 20.2041–1(d), the exercise of the power controls, even though it echoes the gift over, and even though the beneficiaries renounce the gift under the exercise and elect to take by the gift over, *"regardless of local law".* Because of this, even if there were some way for this case to have reached the Supreme Court of New Jersey, and even if it had applied the doctrine of probable intent to delete Grace's exercise of the power, that decision would be no more than an application of local law and as such the federal court would be obliged to disregard it. And see, *Bank of New York v. U. S.,* 526 F.2d 1012 (CA–3, 1975).

On the main issue, plaintiffs' motion for summary judgment is accordingly denied, and defendant's cross-motion is granted.

■ The second issue, namely the assessment of the late filing penalty is also decided in favor of defendant. The facts relied on show that plaintiffs knew a return had to be filed but claim that they relied on the attorney whom they hired for the sole purpose of preparing federal estate tax and New Jersey inheritance tax returns to do so within the time required. There is no question that the return was late.

The court is satisfied that the issue is controlled by *U. S. v. Kroll,* 547 F.2d 393 (CA–7, 1971), holding that the duty to file a return when due is personal and nondelegable in cases where there is no question that a return must be filed. That ruling is not seen as inconsistent with *Hatfield v. Comm'r,* 162 F.2d 628 (CA–3, 1947); *Preston Lea Spruance,* 60 T.C. 141 (1973), aff'd 505 F.2d 731 (CA–3, 1974).

To escape the late filing penalty under 26 U.S.C. § 6651(a), it must appear that the failure to file when due is (1) due to reasonable cause and (2) not due to wilful neglect.

Grace died in early 1973, and nearly 7 weeks elapsed before her 1971 will was presented for probate. Since New Jersey has a waiting period of only 10 days after death, N.J.S. 3A:3–19, an explanation for the long delay is warranted but none is offered.

At argument, in response to a question from the bench, it was agreed that the will was presented for probate by the lawyer who prepared the returns, not by the one who drew the will. Plaintiffs have offered the affidavit of the draftsman of the will, but not that of the lawyer who prepared the returns. Absent any showing of his unavailability to support the claim of "reasonable cause" for delay and of absence of wilful neglect, it is reasonable to draw the inference that his testimony would not support the claim.

Whatever the extent of the burden may be, and assuming that a bare preponderance would suffice, the burden is on plaintiffs to show both the elements required by 26 U.S.C. § 6651(a). There are many reasons that might have caused the delay, aside from the professed ignorance of plaintiffs and the veiled implication of a lack of diligence of the attorney. He may have been delayed in preparation of the return because plaintiffs were slow in furnishing information he needed, to take one example. This is not improbable because the stipulated record shows that the return did not include some real estate that Grace owned. And, while neither executor may be famil-

iar with estate tax laws, it was established at argument that James operates the family printing business. As a businessman he must be aware that tax returns have deadlines for filing. Yet nowhere is it shown that he asked when the return was due, or that the lawyer gave him the wrong date. In addition, the proofs submitted do not address the aspect of absence of wilful neglect.

In view of this ruling, there is no need to deal with defendant's independent assertion that the claims for refund themselves are barred, in any event, for failure to set forth in detail each ground on which the refund is claimed, 26 U.S.C. § 7422(a); Treas.Reg. (1954 Code) 26 C.F.R. § 301.6402–2.

Submit judgment accordingly.