169 N.J. Super. 360 (1979)
404 A.2d 1222
IN THE MATTER OF THE ESTATE OF MAUDE F. THORNTON, DECEASED.
Superior Court of New Jersey, Appellate Division.
Submitted May 22, 1979.
Decided July 9, 1979.
*362 Before Judges LYNCH, CRANE and HORN.
Messrs. Durand, Twombly & Imbriaco, attorneys for appellant The Trustees of Columbia University in the City of New York (Messrs. Joseph E. Imbriaco and Charles J. Hayden, of counsel; Mr. Imbriaco on the brief).
Mr. Charles C. Collins, Jr., attorney for respondent Village of Ridgewood.
The opinion of the court was delivered by LYNCH, P.J.A.D. (retired; temporarily assigned on recall).
This case involves the construction of the last will and testament of Maude F. Thornton who was a resident of the Village of Ridgewood (village) at the time of her death on October 5, 1969.
The second codicil of testatrix' will which gives rise to this controversy reads, so far as pertinent:
THIRTEENTH: I direct that my real property located at 174 North Maple Avenue, Ridgewood, New Jersey, be sold and I give, devise and bequeath the net proceeds thereof together with all the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind, nature and description and wheresoever situate to the VILLAGE OF RIDGEWOOD in the County *363 of Bergen and State of New Jersey, to be used to provide a teenage club house and recreation area.
I further direct that the Village of Ridgewood shall have six (6) months from the date of the probate of this my Last Will and Testament to accept or reject this gift and in the event of its failure to do so, or in the event it elects not to accept the same for the aforesaid uses and purposes, then and in either event it is my will and I direct that my residuary estate shall be divided into three (3) equal shares, parts or portions to be disposed of as follows:
(1) One (1) such share, part or portion I give, devise and bequeath to COLUMBIA UNIVERSITY COLLEGE OF PHARMACY, 115 West 68th Street, New York City, New York, for a scholarship or scholarships in memory of my beloved husband, Edward B. Thornton.
(2) One (1) such share, part or portion, I give, devise and bequeath to COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS, 630 West 168th Street, New York City, New York, for a scholarship or scholarships in memory of my grandfather, Dr. James H. Mills.
(3) One (1) such share, part or portion, I give, devise and bequeath to COLUMBIA COLLEGE, 116th Street and Broadway, New York City, New York, for a scholarship or scholarships in memory of my grandmother, Frances Clinton Mills, who was a direct descendent of De Witt Clinton, who was the first student to matriculate there after the Revolutionary War in what had previously been known as "Kings College". He was Mayor of New York City and died while Governor of the State.
The will and codicils were admitted to probate on October 17, 1969.
On December 23, 1969 the village governing body passed the following resolution:
BE IT RESOLVED, That the Board of Commissioners of the Village of Ridgewood, does accept the gift of Maude F. Thornton, and directs that a copy of this resolution be forwarded to the necessary parties to record the acceptance of the gift.
Thus the provision that the village had six months from the date of the will to accept or reject the gift was complied with. However, almost ten years have passed since the date of the probate, and the testatrix' desire that a teenage clubhouse and recreation area be established has not been realized.
*364 The trial judge gave the village (1) two years from date of judgment (May 11, 1978) to formulate plans for a youth center, and an additional two years to acquire a site and commence construction, and (2) denied counsel fees to the lawyers for Columbia University without prejudice. The Trustees of Columbia University appeal.
The issue to be decided here is whether it was the probable intent of the testatrix that further time be allowed to the village to satisfy her wishes, as permitted by the trial judge, or whether it was her probable intent that, at this time and considering the circumstances of the intervening years, the gift should pass to the alternative charitable legatees, the various Colleges of Columbia University.

I
A review of the events since the probate of the will in 1969 is appropriate.
On February 11, 1971 an initial distribution of $16,500 of the Thornton funds was made to the village. On May 11, 1971 the village passed a resolution creating an advisory body of citizens (hereafter Youth Center Board) to aid in operating a "temporary youth center" at the site of a closed village school (hereafter Union Street experiment). There followed the leasing from June 1971 to June 1972 of a closed school building to be used as a "temporary" youth center in an "experimental type program." The lease was renewed for an additional year. The center was actually operated for about 18 months and the project was abandoned in the Spring of 1973. The abandonment occurred because of teenage apathy and disinterest, neighborhood opposition, property damage within the center, and village council concern as to the costs. But even this project was not expressed as an effort to carry out the Thornton trust, though it was funded by the $16,500 of the money therefrom. On August 25, 1976 the village refunded all that money to the Thornton Trust. The Union Street School experience demonstrated that the community *365 attitude was against the establishment of a permanent teenage clubhouse.
In August 1972 the final accounting of the Thornton estate was filed and final distributions of $320,000 and $20,334.42 were made to the village on October 26, 1972 and February 13, 1973, respectively. The funds are held in a trust account by the village.
For a period of three years, between the closing of the Union Street experiment in 1973 and this suit, instituted on October 28, 1976, the village only considered using the Thornton funds to purchase what was called the Lester tract for use as a park. The village sought to have the court condone this use of the funds, thus departing from the purpose expressed by testatrix. But the lower court judge held the purchase of the Lester tract was an inappropriate use of the funds and not in conformity with testatrix' intention.
Where there is no express provision or time limitation for carrying out the condition attached to a gift, the "court's endeavor is to put itself in the testator's position insofar as possible in the effort to accomplish what he would have done had he `envisioned the present inquiry.'" Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 565-566 (1962); also, Engle v. Siegel, 74 N.J. 287, 290-291 (1977); Clapp, Justice Nathan L. Jacobs  The Doctrine of Probable Intent, 28 Rutg. L. Rev. 251 (1974). The court is not limited to the actual words in the will but can examine competent "extrinsic evidence," including testator's own expressions of intent. Wilson v. Flowers, 58 N.J. 250, 262 (1971).
Ms. Thornton was a high school teacher. This interest in teenagers apparently initiated her desire to help set up a clubhouse for their recreation. If the village did not wish to fulfill her desire, the gift was to go to the several colleges of Columbia University to be used for scholarships. Ms. Thornton was a direct descendent of De Witt Clinton, Governor of the State of New York, who was the first student to matriculate at what is now known as Columbia University.
*366 Testatrix did not make a general bequest to the village. She conditioned her gift on the establishment of a teenage clubhouse and recreation center. See Grebenstein v. St. John's Evangelical Lutheran Church, 3 N.J. Super. 422 (Ch. Div. 1949). Since that was her primary purpose the court should allow the village a reasonable time to carry out the condition for which the bequest was made. When the right to a legacy is dependent upon the performance of an onerous condition, there is no presumption of acceptance until such condition has been performed. In re DeBancourt's Estate, 279 Mich. 518, 272 N.W. 891, 895 (Sup. Ct. 1937).
In Chadwick v. Chadwick, 37 N.J. Eq. 71 (Ch. Div. 1883), decedent's will provided two charitable bequests. First, to the Whippany Church $500 toward the building of a parsonage, or if the Whippany Church had a parsonage, $500 toward its enlargement; and second, to the Paterson Church, $1,000 for the building of a pulpit and the recushioning of seats whenever such church shall rebuild or build a new church. Decedent's family argued that the legacies had lapsed since 14 years had passed since decedent's death and neither bequest was carried out. The court refused to lapse the bequest to Whippany Church for the building of a parsonage. Four years after decedent's death the Whippany Church started to build a new church edifice. However, the work stopped and the land was sold. It afterwards altered its old church edifice and rebuilt the pulpit for $100. At the time of suit the church had made only conditional arrangements for the purchase of a small house suitable for a parsonage. The court allowed the church to use the money to buy a parsonage at a later date because "the Whippany Church appears to be willing to perform the condition on which the legacy to it was given." 37 N.J. Eq. at 75.
However, the court invalidated the gift to the Paterson Church since the church after 14 years had neither removed nor built a new church, and "it does not appear that it is about or proposes to do either of those things." Id. It was said:

*367 It will be in accordance with the testator's intentions and a just construction of the provisions of the will on the subject, to give to that church, under the circumstances, a reasonable time within which to comply with the condition, and, on failure to do so, it will be decreed to have forfeited the legacy, and the legacy will be decreed to have lapsed. [Id.]
In Siebold v. City of Naperville, 19 F. Supp. 281 (D. Ct. Ill. 1937), decedent bequeathed money to the city for the establishment, construction and maintenance of a hospital. If the city declined to accept the donation, the devise would go to his family. The city passed a resolution accepting the donation, but 13 years after it received the money (and 21 years after the will was probated) the city had not made a substantial effort to bring itself into conformity with the will. The court held that the bequest to the City had failed even though Naperville formed a Board of Hospital Commissioners as a step to comply with the will:
As the court construes this will, in the particulars here involved, it means that the residuary bequest was to vest in the City of Naperville when accepted by the city by providing for the establishment and maintenance of a public hospital under the statutes of the State of Illinois. Stated negatively, if the city did not establish, construct, and maintain a public hospital, in accordance with the statutes of Illinois, then the city should not have the bequest. The donation must be accepted within a reasonable time and, in good faith, the city must provide, within a reasonable time, means whereby, under the statutes of Illinois, a public hospital may be established and maintained. In fact, the word "accept," as used in this will, implies a substantial performance of the condition imposed by the testator. The testator had but one particular object in mind, namely, that the city establish a hospital under the statute. The language used plainly indicates that the city was to secure the necessary funds for the public hospital in the manner stated in the will. The condition which he prescribed is to be first complied with before his gift vested, and therefore it is a condition precedent. [at 282]
In Maguire v. City of Macomb, 293 Ill. 441, 127 N.E. 682 (Sup. Ct. 1920), testator devised land to a municipality on the condition that it should, within reasonable time, accept *368 the devise, take possession of the land, and improve it. The court invalidated the devise because the city's seven-year delay in making an actual appropriation for performance of the condition was not performance within a reasonable time.
Although in the case at bar it has been nine years since the initial distribution of money and four years since the final distribution of money, the village argues that they have not had a reasonable time to comply with the condition attached to the gift. It points out that in most of the above cases at least seven years were allowed after final distribution of the gift in order to comply with the condition attached to the gift. However, this argument is not persuasive. In dealing with forfeiture of a gift "there is no [time] limitation over, a performance within a reasonable time, of the conditions as will substantially fulfill the testator's intentions, is sufficient." Young Men's Christian Ass'n v. Appleby, 97 N.J. Eq. 95, 99-100 (Ch. 1924).
The ten-year history of the village's activity toward compliance with testatrix' wish to have a teenage club and recreation center established reveals, at best, sporadic efforts to that end, and in fact attempts to divert the use of the funds to entirely different purposes. This can hardly be said to be a "reasonable" delay in accepting the gift for the purpose for which it was bequeathed. In fact, during this period no steps were taken to fulfill the purpose of testatrix' will. As the brief for Columbia University says, there has been no action to acquire a site for a teenage facility, no plans for its design, no budget estimates for its original cost or annual operating costs of such a facility, and no methods of financing or any cost overruns have been undertaken.
True, in February 1977, after the village had notified the court that it was withdrawing its complaint seeking division of the Thornton trust to purchase of the Lester tract, the village council asked the Parks, Recreation and Conservation Board to begin a study toward establishment of a teenage center, its size, layout, uses and operating expenses. As *369 of the time of trial on February 8, 1978 there was no evidence that any such study was ever begun.
In short, we conclude that the village in the years since probate of the will did not exercise reasonable diligence to comply with the desires of the testatrix. Indeed, we are convinced that it, as dictated by Fidelity Union Trust Co., supra, 36 N.J. at 565, the court puts itself in testatrix' position insofar as possible in the effort to accomplish what she would have done if she were to look at the village's lack of diligence in fulfilling her wishes in approximately the last ten years since her death, her wishes would dictate that the bequest go over to her alternative beneficiaries of Columbia University. It is so ordered.

II
The trial judge disallowed applications for fees and disbursements, basically by holding that there was no "fund in court." R. 4:42-9. In this the judge erred. There is a fund in court where it is in the hands of a fiduciary who is a party before the court and when it is within the court's jurisdictional authority to deal with it. 7 N.J. Practice (Clapp, Wills and Administration) (3 ed.), § 545; see also, Katz v. Farber, 4 N.J. 333 (1950). Though the village is not the trustee of an express trust in this instance, it holds the funds as trustee and the court clearly has jurisdiction to deal with them.
Further, the services of counsel for Columbia University, both in opposition to the village's action to divert the funds from her express intention and in seeking proper construction of the will, benefits the estate and therefore may be charged against it. 5 N.J. Practice (Clapp, Wills and Administration) (3 ed.), § 296. See also, Risely v. Kirkman, 56 N.J. 464, 471 (1976).
The matter is therefore remanded to the trial court for the fixing of reasonable counsel fees and costs, payable to the attorneys for Columbia University in accordance with the views herein expressed.