Estate of Adrian K. Rapelje, Priscilla R. Wright and Helen R. Mulligan, Executors, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 1605–77.     Filed October 15, 1979.

---

*Donald J. Holzman,* for the petitioners.
*Barry J. Finkelstein,* for the respondent.

DAWSON, *Judge:* Respondent determined a $13,237.74 deficiency in the Federal estate tax of Adrian K. Rapelje and additions to tax under the provisions of section 6651[1] in the amount of $2,802.73.[2] Due to concessions by the parties, the only issues presented for decision are: (1) Whether under section 2036(a)(1) the value of a residence which decedent had transferred by gift to his daughters must be included in his gross estate, and (2) whether there was reasonable cause for the late filing of the estate tax return and late payment of the estate tax liability.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts together with the attached joint exhibits are incorporated herein by this reference.

At the time the estate's petition was filed, Priscilla R. Wright (hereinafter Mrs. Wright) and Helen R. Mulligan (hereinafter Mrs. Mulligan), executrices of the Estate of Adrian K. Rapelje, resided in Glens Falls, N.Y., and Buffalo, N.Y., respectively.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.

[2] Subsequent to the filing of the estate tax return and prior to the issuance of the statutory notice of deficiency, petitioners' attorney paid the following additions to tax which were computed upon the amount of net estate tax payable set forth on the return as filed:

| | |
|---|---|
| Sec. 6651(a)(1) ......... | $2,612.05 |
| Sec. 6651(a)(2) ......... | 406.32 |
| | 3,018.37 |

In the statutory notice of deficiency, respondent determined a further addition to tax under sec. 6651(a)(1) in the amount of $2,802.73. This addition was computed with reference to the amount of the estate tax deficiency. Because of a mathematical error in the deficiency notice, respondent then filed an amended answer claiming an increase in that addition to tax from $2,802.73 to $3,114.14. Thus, respondent claims that petitioners are liable for a total of $6,132.51 in additions to tax under sec. 6651(a), of which $3,018.37 has already been paid.

Adrian K. Rapelje (hereinafter the decedent) died on November 18, 1973. In his will, the decedent named his two daughters as coexecutrices. The Federal estate tax return for decedent's estate was executed by Mrs. Wright on February 11, 1975, and by Mrs. Mulligan on February 15, 1975. The return was filed with the Andover Service Center, Andover, Mass., on March 7, 1975.

On August 11, 1969, the decedent transferred his personal residence (hereinafter residence) in Saratoga Springs, N.Y., to his two daughters. The decedent received no consideration for the transfer and reported the transfer as a taxable gift. The decedent continued living at the residence until November 1969 when he went to Florida for a vacation. During his stay in Florida, he considered purchasing a house in Fort Lauderdale but decided against it and returned to the residence in Saratoga Springs in May 1970. In July 1970, the decedent suffered a stroke which left him paralyzed on his right side and unable to speak. His health deteriorated thereafter and he died on November 18, 1973. From the time of the stroke until his death, the decedent lived at the residence.

Sometime in September 1969, Mrs. Mulligan's niece moved into the residence with her husband and they lived there until January 1970. In September 1971, Mrs. Mulligan's daughter moved in and stayed for several months. Thereafter, the decedent was the only occupant of the residence.

Neither Mrs. Mulligan nor Mrs. Wright ever moved into the residence during the decedent's life. The decedent continued to pay the real estate taxes on the property after the transfer, although Mrs. Wright did pay some utility bills. The decedent paid no rent for the use of the home. Neither daughter made any attempt to sell or rent the residence prior to decedent's death. They also made no attempt to sell their own homes. Although no express agreement existed between the decedent and his daughters regarding his continued use of the home after the gift, the parties nevertheless intended that the decedent would be allowed to live there until he purchased another home.

After the death of the decedent, Mrs. Wright retained the services of Theodore H. Grey, an attorney, to handle the affairs of the estate. Although there was no written agreement concerning the services to be rendered, he understood that he would be responsible for filing the State and Federal estate tax

returns. Section 6075(a) requires that the Federal estate tax return be filed within 9 months after the death of the decedent, but because of Mr. Grey's negligence, it was not filed until approximately 6 months after the due date. As a result of the late filing, respondent determined that additions to tax were due under the provisions of section 6651(a)(1) and (2) in the amount of $3,018.37. Mr. Grey paid these additions out of his own funds.

The executrices knew that a Federal estate tax return had to be filed but they did not know when it was due and made no attempt to find out. Instead, they simply trusted the attorney to see to it that the returns were timely filed. They never inquired as to what their duties and responsibilities as executrices were and failed to make reasonable inquiries into Mr. Grey's progress on the preparation of the Federal estate tax return in order to insure compliance with the filing requirements.

## ULTIMATE FINDINGS OF FACT

(1) Pursuant to an implied agreement between decedent and his daughters, decedent retained for a period, which did not in fact end before his death, possession and enjoyment of the residence which he had given to them.

(2) Petitioners' reliance on their attorney to timely file the estate tax return did not constitute reasonable cause for their failure to comply with the filing requirements or to pay the estate tax liability when due.

## OPINION

### 1. *Section 2036 Issue*

The issue presented here is whether the value of decedent's residence must be included in his gross estate pursuant to section 2036, which provides in pertinent part:

SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has *retained* for his life or for any period not ascertainable without reference to his death or *for any period which does not in fact end before his death—*

(1) the possession or enjoyment of, or the right to the income from, the property, * * *

[Emphasis added.]

This section requires property to be included in the decedent's estate if he retained the actual possession or enjoyment thereof, even though he may have had no enforceable right to do so. *Estate of Honigman v. Commissioner,* 66 T.C. 1080, 1082 (1976); *Estate of Linderme v. Commissioner,* 52 T.C. 305, 308 (1969). Possession or enjoyment of gifted property is retained when there is an express or implied understanding to that effect among the parties at the time of transfer. *Guynn v. United States,* 437 F.2d 1148, 1150 (4th Cir. 1971); *Estate of Honigman v. Commissioner, supra* at 1082; *Estate of Hendry v. Commissioner,* 62 T.C. 861, 872 (1974); *Estate of Barlow v. Commissioner,* 55 T.C. 666, 670 (1971).[3] The burden is on the petitioner to disprove the existence of any implied agreement or understanding, and that burden is particularly onerous when intrafamily arrangements are involved. *Skinner's Estate v. United States,* 316 F.2d 517, 520 (3d Cir. 1963); *Estate of Hendry v. Commissioner, supra* at 872; *Estate of Kerdolff v. Commissioner,* 57 T.C. 643, 648 (1972).[4]

In the present case, there was no express agreement allowing decedent to retain possession and enjoyment of the home. Respondent, however, contends that the facts support an inference of an implied understanding between the decedent and his daughters whereby decedent was allowed to live in the house until he was able to locate a new home. Petitioners maintain that although such an understanding may have arisen after decedent suffered his stroke, there was no such agreement in existence at the time of the gift. Based on our review of the record before us, we conclude that petitioners have failed to meet their burden of proving that a tacit agreement did not arise contemporaneously with the transfer.

In determining whether there was an implied understanding between the parties, all facts and circumstances surrounding the transfer and subsequent use of the property must be considered.

---

[3]We note here that under sec. 2036 it is irrelevant whether the parties *intended* at the time of transfer that the decedent would retain possession and enjoyment *for his life.* The statute requires only that the decedent retain possession or enjoyment "for any period which does not *in fact* end before his death." See *Estate of Honigman v. Commissioner,* 66 T.C. 1080 (1976). Thus, even if the donees in the present case understood at the time of transfer that decedent would remain in the house only until he found a new home, there would still be inclusion under sec. 2036 because he retained possession or enjoyment of the property up to the time of his death.

[4]The cases cited effectively dispose of petitioners' contention that the burden is on respondent to prove the existence of any implied agreement.

The continued exclusive possession by the donor and the withholding of possession from the donee are particularly significant factors. *Guynn v. United States, supra* at 1150; compare *Estate of Linderme v. Commissioner, supra* at 309, with *Estate of Gutchess v. Commissioner,* 46 T.C. 554, 557 (1966). In the present case, the donor maintained almost exclusive occupancy of the residence until his death in 1973. The transfer took place in August 1969. Decedent continued to live there alone until September 1969. Sometime in September, Mrs. Mulligan's niece moved in with her husband and they stayed until January 1970. In November 1969, the decedent went to Florida and did not return until May 1970. From May 1970 until September 1971, the decedent lived alone at the residence. In September 1971, Mrs. Mulligan's daughter moved in and stayed for several months. Thereafter, the decedent was the sole occupant of the residence.

A plausible argument could be made that the donees were making indirect use of the property by allowing their relatives to stay there, particularly if they did so over the decedent's objection. There is nothing in the record, however, to support that proposition. Decedent may have been wholly indifferent to their use of the property, or he may even have invited them himself. Even if he had violently opposed the presence of the guests, that would only tend to show an intent by the donees to exercise dominion and control over the property, which is only one factor to be considered in deciding whether decedent retained possession pursuant to an implied agreement.

In spite of the donees' continued residence in their original houses after the gift, petitioners argue that the conduct of the parties subsequent to the transfer negates the existence of any implied agreement. For example, they contend that the primary purpose of decedent's 6-month sojourn in Florida soon after the transfer was to purchase a new house. We disagree. Although decedent did look at one house for sale in Fort Lauderdale, the record does not reveal any extensive house hunting activity. Moreover, the decedent had made identical winter trips to Florida every year for the past 10 years. Thus, we are not convinced that the decedent felt any compelling need to locate a new home on this particular visit.

Petitioners also maintain that Mrs. Mulligan intended to move into the residence in 1971 when her husband was due to retire. In

anticipation of this event, the couple visited the home frequently on weekends and vacations and made some repairs. Mrs. Mulligan also notified her employer in Buffalo that she would be leaving in 1971. This planned move was abandoned, of course, when the decedent suffered his stroke. We think that Mrs. Mulligan did intend to move into the residence eventually, but the facts suggest to us that the move was implicitly conditioned on the successful conclusion of the decedent's search for a new home.

There are other facts which support an inference of an implied understanding between the parties. The decedent paid no rent to his daughters for the continued use of the property. Although Mrs. Wright did pay some utility bills relating to the property, the decedent continued to pay the real estate taxes. Neither daughter made any attempt to sell her own house. Nor did they ever attempt to sell or rent the residence prior to the decedent's death. The plain fact of the matter is that with the exception of the change in record title, the gift of the property did not effect any substantial changes in the relationship of the parties to the residence. Thus, we find that there was an implied understanding between the parties arising contemporaneously with the transfer whereby the decedent was allowed to retain possession or enjoyment of the residence for a period which did not in fact end before his death.

Accordingly, we hold that under section 2036 the value of the residence must be included in decedent's gross estate.

## 2. *Section 6651 Issue*

We must determine whether the facts of this case establish reasonable cause for petitioners' failure to file the estate tax return and pay the related tax liability within the statutory time period. If not, petitioners are liable for the additions to tax authorized by section 6651(a)(1) and (2).[5] Petitioners contend

---

[5]SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) ADDITION TO THE TAX.—In case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

that their reliance on retained counsel to timely file the required return constitutes reasonable cause under section 6651(a). Respondent, on the other hand, maintains that the executrices had a duty to make certain that their legal representatives acted with diligence in complying with the filing and payment deadlines. We agree with respondent.

Section 301.6651–1(c)(1), Proced. & Admin. Regs., provides that if a taxpayer exercises ordinary business care and prudence and is still unable to file the return within the statutory time period, then the delay is due to a reasonable cause. If a taxpayer knows that a return should be filed and delegates the responsibility of preparing and filing the return to a third person, mere reliance on the delegate to timely file the return is not enough to establish the exercise of ordinary business care.[6] The taxpayer must, at a minimum, ascertain the due date of the return[7] and

---

(2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *

[6]Where a taxpayer is advised by a professional tax consultant that no return is required, he is generally held to have exercised ordinary business care and prudence in relying on that advice. Commissioner v. American Ass'n of Engineers Employment, Inc., 204 F.2d 19 (7th Cir. 1953); Hatfried, Inc. v. Commissioner, 162 F.2d 628 (3d Cir. 1947); Estate of Christ v. Commissioner, 54 T.C. 493 (1970), affd. 480 F.2d 171 (9th Cir. 1973); Estate of Lammerts v. Commissioner, 54 T.C. 420, 446 (1970), affd. per curiam on this issue 456 F.2d 681 (2d Cir. 1972); Estate of Duttenhofer v. Commissioner, 49 T.C. 200, 205–206 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969). The same conclusion has been reached in situations involving complicated areas of tax law where the taxpayer, who could not reasonably be expected to know whether a tax return is required, provided the adviser with all the necessary information and directed him to file the appropriate returns. Haywood Lumber & Min. Co. v. Commissioner, 178 F.2d 769 (2d Cir. 1950); Orient Investment & Finance Co. v. Commissioner, 166 F.2d 601 (D.C. Cir. 1948), revg. and remanding a Memorandum Opinion of this Court; West Coast Ice Co. v. Commissioner, 49 T.C. 345 (1968); Estate of Rosenblatt v. Commissioner, T.C. Memo. 1977–12; Paolinelli v. United States, an unreported case (N.D. Cal. 1978, 43 AFTR 2d 79–1270, 79–1 USTC par. 13,278). The present case is distinguishable, however, in that the executrices were aware that an estate tax return was required to be filed.

[7]Some courts have held that if the executor is aware of the necessity of filing an estate tax return but is unaware of the due date, then his reliance on the tax consultant for timely filing constitutes the exercise of ordinary care. The leading case is United States v. Kroll, 547 F.2d 393 (7th Cir. 1977), in which the court held that the executor's reliance on the attorney to file the return became unreasonable only after the executor learned that the return was overdue. Accord, Sanderling, Inc. v. Commissioner, 571 F.2d 174 (3d Cir. 1978); Lewis v. United States, 467 F. Supp. 30 (W.D. Pa. 1979). However, the Kroll opinion contained the following broad statement, which is not entirely consistent with the specific holding of the case (547 F.2d at 396):

"Thus, we hold that, when there is no question that a return must be filed, the taxpayer has a personal, nondelegable duty to file the tax return when due. * * *"

Citing this statement as support for their decisions, several Federal District Courts have held that

take appropriate steps to see to it that the delegate acts with diligence in fulfilling the filing obligation. *Ferrando v. United States*, 245 F.2d 582, 589 (9th Cir. 1957); *Paula Construction Co. v. Commissioner*, 58 T.C. 1055, 1061 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973); *Estate of Lammerts v. Commissioner*, 54 T.C. 420, 445–447 (1970), affd. per curiam on this issue 456 F.2d 681, 683 (2d Cir. 1972); *Estate of Duttenhofer v. Commissioner*, 49 T.C. 200, 205 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969); *Estate of Geraci v. Commissioner*, 502 F.2d 1148 (6th Cir. 1974), affg. per curiam a Memorandum Opinion of this Court, cert. denied 420 U.S. 992 (1975).

In the instant case, the executrices knew that a Federal estate tax return was required to be filed, but they were unaware of the due date. In spite of their ignorance, they never asked their attorney about the filing requirements. Nor did they make any inquiries about their general legal obligations and duties as executrices of the decedent's estate. In addition, the record reveals only one instance where the executrices attempted to ascertain Mr. Grey's progress on the return.[8] This meager inquiry is insufficient to discharge the executrices' obligation to oversee the attorney's compliance with the filing requirements.[9]

Given the facts in evidence, we conclude that the executrices did not exercise ordinary care with regard to their duties to file the return and pay the estate tax within the prescribed time.

Accordingly, we hold that petitioners have failed to show reasonable cause for their failure to file the estate tax return

---

an executor's reliance on his attorney was unreasonable even when there was no evidence that the executor was aware of the due date. See, e.g., *Ruel v. United States*, 430 F. Supp. 1122 (E.D. Wis. 1977); *Estate of Campbell v. United States*, 449 F. Supp. 675 (D. N.J. 1977); *Richter v. United States*, 440 F. Supp. 921 (D. Minn. 1977). But cf. *Sheehan v. United States*, an unreported case (N.D. Ohio 1979, 44 AFTR 2d 79–6127, 79–1 USTC par. 13,304). Petitioners rely on *Gray v. United States*, 453 F. Supp. 1356 (W.D. Mo. 1978), wherein the court discussed the possible inconsistency in the *Kroll* opinion and concluded that "If the duty to file a return is personal and nondelegable, it is only when the taxpayer has actual knowledge of the date the return in question is due." *Gray v. United States, supra* at 1360. We disagree. Given that the executor is aware of the necessity of filing a return, we think it reasonable to presume that he is aware of the existence of a filing deadline. Based on that presumption, we think the executor fails to exercise ordinary care if he does not ascertain the due date of the return.

[8]Mrs. Mulligan testified that Mrs. Wright called the attorney's office and asked the secretary "how they were coming along," and the secretary replied, "We're working on it."

[9]Petitioner's reliance on *Estate of DiPalma v. Commissioner*, 71 T.C. 324 (1978), is misplaced. In that case, we held that the executrix's reliance on the attorney was reasonable because he led her to believe that the presence of litigation concerning the assets of the estate justified the delay in filing the estate tax return. We think that *DiPalma* falls into the category of cases discussed in n. 6 *supra*, and does not control our conclusion here.

and to pay the estate tax within the statutory time period, and they are therefore liable for the additions to tax imposed by section 6651(a)(1) and (2).

To give effect to concessions by the parties and our conclusions on the disputed issues,

*Decision will be entered under Rule 155.*