T.C. Memo. 1997-242


UNITED STATES TAX COURT


ESTATE OF DOROTHY MORGANSON SCHAUERHAMER, Deceased,
KARL C. DEAN, PERSONAL REPRESENTATIVE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25058-95.                    Filed May 28, 1997.


Owen G. Fiore and John F. Ramsbacher, for petitioner.

G. Michelle Ferreira and Kimberley J. Peterson, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, Judge:  By notice of deficiency dated August 31,
1995, respondent determined a $947,049 deficiency in petitioner's
estate tax and a $189,410 accuracy-related penalty for
negligence.  Unless otherwise indicated, all section references

are to the Internal Revenue Code in effect as of the date of the decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues we must decide are as follows:

1. Whether, pursuant to section 2036(a)(1), the value of certain assets transferred to family partnerships is includable in the decedent's gross estate. We hold that it is.

2. Whether petitioner, pursuant to section 6662(a), is liable for the accuracy-related penalty for negligence. We hold it is not.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time of her death, on December 13, 1991, Dorothy Schauerhamer (decedent) resided in Salt Lake City, Utah. At the time the petition was filed, petitioner's personal representative had a mailing address in Salt Lake City, Utah.

Decedent and her husband Willard Schauerhamer had three adult children, David Schauerhamer, Diane Liddiard, and Sandra Bradshaw, and jointly managed Economy Builders Supply, Inc., a closely held corporation engaged in the sale of building materials. After Willard's death in 1983, decedent took control of the business. She also managed several rental properties.

In late November of 1990, decedent was diagnosed with colon cancer. In early December of that year, she retained an attorney, Travis Bowen, to set her business affairs in order.

Mr. Bowen, in consultation with decedent, prepared an estate plan.

On December 31, 1990, decedent, along with her three children and their spouses, met with Mr. Bowen at his office. Mr. Bowen explained that three family limited partnerships would be formed and that David, Sandra, and Diane would each become a general partner in a partnership. He explained that after the limited partnerships were formed, decedent's business holdings would be transferred to the partnerships, with each partnership receiving an undivided one-third interest in the transferred assets. He further advised that, after the partnerships were formed and funded, decedent would transfer limited partnership interests to her children and their family members. On December 31, 1990, three substantially identical limited partnership agreements were executed. The certificates of limited partnership were filed with the Utah Department of Commerce on May 13, 1991.

The partnership agreements set forth numerous terms and covenants with respect to the partnerships. Pursuant to the partnership agreements, David and decedent were the general partners in the "DAVID M. SCHAUERHAMER FAMILY LIMITED PARTNERSHIP", Diane and decedent were the general partners in the "DIANE KAY LIDDIARD FAMILY LIMITED PARTNERSHIP", and Sandra and decedent were the general partners in the "SANDRA GAYLE BRADSHAW FAMILY LIMITED PARTNERSHIP". Each partnership agreement also

named decedent as the limited partner. In addition, decedent was named the managing partner of each partnership. The partnership agreements provided that decedent, in her capacity as managing partner, had "full power to manage and conduct the Partnership's business operation in its usual course." From the time the partnerships were formed until shortly before decedent's death, she managed the partnership assets.

The partnership agreements included provisions relating to: (1) Capital contributions; (2) allocation of profits and losses; (3) partnership records; (4) management responsibilities and powers; (5) admission of new partners; (6) partnership dissolution and liquidation; and (7) agency relationships among partners. The partnership agreements provided that decedent would contribute $1 for her 1-percent interest as a general partner and $95 for her 95-percent interest as a limited partner. Each of decedent's children was required to contribute $4 for a 4-percent general partner interest.

On December 31, 1990, and on November 5, 1991, decedent transferred some of her business assets, in undivided one-third shares, to the partnerships. The assets included real estate, partnership interests, and notes receivable. The assets transferred and their values (as of the date of decedent's death) were as follows:

| Assets Transferred 12/31/90 | Value |
|---|---|
| 1. Ho Ho Gourmet Restaurant building | $176,000 |

| | | |
|---|---|---|
| 2. | Southwick Motor Company building | 155,000 |
| 3. | Economy Builders Supply building | 265,300 |
| 4. | Cambridge South Subdivision | 220,000 |
| 5. | Lot 21, Alpine, Utah | 38,000 |
| 6. | Lot 22, Kern County, California | 4,000 |
| 7. | 398 East 3300 South property | 73,000 |
| 8. | 5-percent interest in Economy Land & Rentals Partnership | 25,000 |
| 9. | 15-percent interest in Redwood Village Apartments Partnership | 147,821 |
| 10. | 5-percent interest in Schauerhamer Family Limited Partnership | 85,700 |
| 11. | Note receivable from David Schauerhamer and Warren Bradshaw | 64,000 |
| 12. | Notes receivable from Economy Builders Supply, Inc. | 385,000 |

| | Assets Transferred 11/5/91 | Value |
|---|---|---|
| 1. | Airport System Refunding Revenue Bond | $289,000 |
| 2. | 40 Intermountain Power Agency Supply Revenue Bonds | 206,000 |

Also on December 31, 1990, decedent executed 33 documents (i.e., 11 relating to each of the three partnerships) entitled "ASSIGNMENT OF INTEREST IN LIMITED PARTNERSHIP". Each assignment stated that a $10,000 interest in the partnership was being assigned. On January 1, 1991, decedent executed an additional 33 assignments of partnership interests (i.e., 11 relating to each of the three partnerships) in the amount of $10,000 each. All 66 assignments were made to family members.

The partnership agreements each required that all income from the partnership be deposited into a partnership account. Shortly after the partnerships were formed, each partnership's initial capital was deposited into partnership bank accounts. Decedent deposited, into an account jointly held by her and

David, all partnership income and income from other sources.  She did not maintain any records to account separately for partnership and nonpartnership funds.  Decedent utilized the account as her personal checking account, and from this account she paid personal and partnership expenses.

Decedent's executor filed Form 706 (United States Estate (and Generation-Skipping Transfer) Tax Return) dated September 14, 1992.  On that return, the estate did not include in the gross estate the value of the 66 $10,000 limited partnership interests decedent had assigned to family members.  The estate did, however, include the value of the remaining partnership interests.  The amounts included were based on advice from competent tax professionals and a property appraisal company.

In the notice of deficiency issued to petitioner, respondent determined a $947,049 deficiency and a $189,410 accuracy-related penalty for negligence.  The deficiency was based on respondent's determination that the value of the assets contributed to the partnerships was includable in decedent's gross estate.  The deficiency was also based on a determination that petitioner had undervalued certain assets.  The petition in this case was filed on November 30, 1995.

## OPINION

As a preliminary matter, the parties disagree as to whether decedent owned, at the time the partnerships were funded, a

property located at 398 East 3300 South with a stipulated date-of-death value of $73,000. Respondent determined that decedent owned the property, and petitioner therefore bears the burden of proving otherwise. Rule 142(a). The documentation petitioner has presented is inadequate to satisfy petitioner's burden of proof. As a result, we conclude that decedent owned the 398 East 3300 South property at the time the partnerships were funded.

Respondent contends that the value of the assets transferred to the purported partnerships is includable in decedent's gross estate pursuant to section 2033, 2036(a)(1), or 2038. We conclude that the value of the assets is includable pursuant to section 2036(a)(1). As a result, we do not address sections 2033 and 2038.

Section 2036(a)(1) provides that a decedent's gross estate includes the value of all property interests transferred (other than for full and adequate consideration in money or money's worth) by a decedent during her life where she has retained for life the possession or enjoyment of the property, or the right to the income from the property. The term "enjoyment" refers to the economic benefits from the property. Estate of Gilman v. Commissioner, 65 T.C. 296, 307 (1975), affd. 547 F.2d 32 (2d Cir. 1976). Thus, "Enjoyment as used in the death tax statute is not a term of art, but is synonymous with substantial present economic benefit." McNichol's Estate v. Commissioner, 265 F.2d 667, 671 (3d Cir. 1959), affg. 29 T.C. 1179 (1958).

Retained enjoyment may exist where there is an express or implied understanding at the time of the transfer that the transferror will retain the economic benefits of the property. Guynn v. United States, 437 F.2d 1148, 1150 (4th Cir. 1971); Estate of Rapelje v. Commissioner, 73 T.C. 82, 86 (1979). The understanding need not be legally enforceable to trigger section 2036(a)(1). Estate of Rapelje v. Commissioner, supra. The retention of a property's income stream after the property has been transferred is "very clear evidence that the decedent did indeed retain 'possession or enjoyment.'" Estate of Hendry v. Commissioner, 62 T.C. 861, 873 (1974). Whether there was an implied agreement is a question of fact to be determined with reference to the facts and circumstances of the transfer and the subsequent use of the property. Id. at 872.

The facts of this case establish that an implied agreement existed among the partners. Decedent owned the assets subsequently transferred to the partnerships and collected the income these assets generated. On December 31, 1990, decedent formed the partnerships and contributed some of her business holdings. The partnership agreements required that each partnership maintain a bank account, and that all income from the partnerships be deposited into these accounts. After the formation of the partnerships, a partnership bank account was opened in the name of each partnership, and each partnership's $100 of initial capital was deposited into the account. As the

partnerships earned income, however, decedent, in violation of the partnership agreements, did not deposit the income into the partnership accounts. Instead, she deposited the income into the account she utilized as her personal checking account, where it was commingled with income from other sources. Such deposits of income from transferred property into a personal account are highly indicative of "possession or enjoyment". Id.

Sharlet Schauerhamer (David's wife), Diane, and Sandra testified at trial that they were aware that decedent was depositing the funds into her personal, rather than a partnership, account. Moreover, they acknowledged that the formation of the partnerships was merely a way to enable decedent to assign interests in the partnership assets to members of her family. The assets and income would be managed by decedent exactly as they had been managed in the past. Where a decedent's relationship to transferred assets remains the same after as it was before the transfer, section 2036(a)(1) requires that the value of the assets be included in the decedent's gross estate. Guynn v. United States, supra; Estate of Hendry v. Commissioner, supra at 874.

Petitioner contends that decedent did not spend any of the partnership funds for her personal benefit. Petitioner bases this contention on bank statements relating to the account and the testimony of Richard Haynie, decedent's accountant. Neither

is adequate to support petitioner's contention. The bank statements indicate that, on the date of decedent's death, the balance in the account exceeded the partnership income that she had deposited. There is no evidence, however, to establish that she did not spend the partnership income and later deposit income from other sources. In addition, Mr. Haynie testified that decedent did not spend partnership funds for her personal benefit. His testimony, which was apparently based on his review of the bank statements and not any personal, independent knowledge, fails to establish petitioner's contention.

As a result, the value of the partnership assets is includable in decedent's gross estate pursuant to section 2036(a)(1).

Section 6662(a) imposes an accuracy-related penalty in an amount equal to 20 percent of the portion of any underpayment to which the section applies. The section applies to, among other items, the portion of an underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence has been defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). It includes the failure to make a reasonable attempt to comply with the Internal Revenue Code. Sec. 6662(c).

Respondent contends that petitioner understated the value of decedent's gross estate. Petitioner contends that it relied on

professional accountants, attorneys, and appraisers in preparing the returns. In essence, petitioner contends that any understatements of tax were in good faith and due to reasonable cause. See sec. 6664(c).

The regulations state that whether an underpayment of tax is made in good faith and due to reasonable cause will depend upon the facts and circumstances of each case. Sec. 1.6664-4(b), Income Tax Regs. Reliance on the advice of a professional will constitute good faith and reasonable cause only where such reliance was reasonable. Id. We conclude that petitioner acted reasonably and in good faith in relying on the advice of tax professionals and property appraisers. As a result, petitioner is not liable for the accuracy-related penalty for negligence.

We have considered all other arguments made by the parties and found them to be either irrelevant or without merit.

To reflect the foregoing,

Decision will be entered
under Rule 155.