114 T.C. No. 9


UNITED STATES TAX COURT


ESTATE OF CHARLES E. REICHARDT, DECEASED,
WILLIAM D. REICHARDT, INDEPENDENT EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1224-98.                     Filed March 1, 2000.


        Decedent (D) had two children, C and W.  On June
17, 1993, D formed a revocable family trust (the trust)
and a family limited partnership (the partnership).
The trust was the general partner of the partnership.
D, C, and W were named cotrustees, but only D performed
any functions as trustee.

        D transferred his residence and all of his other
property (except for his car, personal property, and
some cash) to the partnership through the trust.  D's
transfer was not a bona fide sale for full and adequate
consideration.  On Oct. 22, 1993, D gave C and W each a
30.4-percent interest in the limited partnership.  D
retained possession and enjoyment of and the right to
income from the property he transferred to the
partnership until he died on Aug. 21, 1994.

      Held:  The fair market value at D's date of death of assets D transferred to the partnership is included in D's gross estate.  See sec. 2036(a), I.R.C.

Rex B. Cruse, Jr., and S. Jeffrey Gately, for petitioner.

Deborah H. Delgado, T. Richard Sealy III, and James G. MacDonald, for respondent.

      COLVIN, Judge:  Respondent determined that petitioner is liable for a deficiency in gift tax of $161,494 for gifts made by decedent in 1993 and a deficiency in estate tax of $358,771. After concessions,[1] the issue for decision is whether assets that decedent transferred to the partnership are included in his gross estate under section 2036(a).  We hold that they are, and that the fair market value of those assets was $1,634,654 when decedent died.[2]

---

     [1]  Respondent no longer contends that (1) the partnership is a sham or that (2) the duty of consistency or sec. 2703(a)(2) applies here.  Petitioner's motion to shift the burden of proof regarding those theories is moot.

     [2]  In light of this holding, we need not decide whether, as respondent contends, (1) the assets transferred to the partnership are included in decedent's gross estate under sec. 2038, (2) any "applicable restriction" in the partnership agreement is disregarded under sec. 2704(b), (3) lapsed liquidation rights are included in decedent's gross estate under sec. 2704(a), or (4) decedent did not make another gift to his children in 1994.

Unless stated otherwise, section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Decedent and His Family

Decedent was married to Jessie Glenn Reichardt (Mrs. Reichardt). They had two children, Carolyn A. Reichardt Foose (Carolyn Foose) and William D. Reichardt (William Reichardt). Mrs. Reichardt died at age 77 on December 6, 1991. Decedent lived at 214 Encino, Alamo Heights, San Antonio, Texas (214 Encino), when he died on August 21, 1994.

B. Mrs. Reichardt

1. Mrs. Reichardt's Inheritance

Mrs. Reichardt graduated from Rice University in Houston, Texas. Her father died in 1971. Mrs. Reichardt handled her own business affairs. Mrs. Reichardt inherited from her father an undivided one-half interest in several parcels of real property in Kleberg and Nueces Counties, Texas, and various securities. Mrs. Reichardt's sister, Ruth Welch (Welch), inherited the other one-half interest in the property.

Mrs. Reichardt's uncle, Jessie Dennett, died in 1973. Mrs. Reichardt inherited from Jessie Dennett a one-half undivided interest in real property in Kleberg County, Texas, and a one-

third undivided interest in real property in San Patricio and Cameron Counties, Texas. Welch inherited the other one-half interest in the Kleberg County property. Welch and Mrs. Reichardt's cousin, Ella Gordan, also each inherited one-third interests in the San Patricio and Cameron Counties property. The Cameron and San Patricio Counties property remained in the name of the Estate of Jessie Dennett through the time of trial in this case. Mrs. Reichardt and Welch managed Mrs. Reichardt's separate property.

Mrs. Reichardt and her children knew that Mr. Reichardt was involved with another woman (not identified in the record). Mrs. Reichardt considered filing for divorce (at a time not specified in the record) but never did so.

When she died, Mrs. Reichardt's separate property included undivided interests in 22 parcels of real property in four Texas counties and some securities. Her community property included four checking accounts, a note receivable from Bruce Graham (Graham) dated November 23, 1987 (the Graham note), stock and bonds, two cars, the residence at 214 Encino, and three rental properties on Routt Street (the Routt rental property) in San Antonio.

2. Mrs. Reichardt's Will

In her will, Mrs. Reichardt left decedent all of her community property and a life interest in her separate property.

Mrs. Reichardt authorized decedent to sell, lease, or otherwise dispose of any of the property subject to the life interest on terms that he deemed advisable, without requiring him to account for or replace any of it. Her will provided that decedent would lose his life interest in her separate property if he remarried. Mrs. Reichardt left the remainder interest to her children and appointed decedent and their children as joint independent coexecutors.

3.    Probate of Mrs. Reichardt's Estate

On May 17, 1993, decedent signed and filed an inventory in the probate court for his wife's estate without consulting his children. Decedent reported that Mrs. Reichardt's estate included $744,597.50 in separate property and $612,648.50 in community property (a total of $1,357,246). Decedent mistakenly reported that her estate included no real estate in Nueces County, Texas, and that some securities were both community and separate property.

In November 1993, Thomas L. Goade (Goade), a real estate appraiser retained by Mrs. Reichardt's estate, concluded that, as of September 15, 1993, her estate had $411,178.50 in community assets and $775,986.67 in separate assets (a total of $1,187,165.17). On November 30, 1993, decedent and his children, as coexecutors, filed an amended inventory using the asset values provided by Goade.

C.    Decedent's Decision To Form a Family Limited Partnership

William Reichardt met with John R. Hannah (Hannah), a certified public accountant, and asked about post mortem estate planning for his mother's estate.  Hannah recommended that the children and decedent form a family limited partnership. Decedent, who had just been diagnosed with terminal cancer, and William Reichardt met with Hannah on June 5, 1993, to discuss Mrs. Reichardt's estate.

On June 17, 1993, decedent signed his will and a durable power of attorney and formed a revocable living trust called the Reichardt Family Trust (the trust) and a family limited partnership called Reichardt Partners, Ltd. (the partnership). Decedent appointed himself and his children as cotrustees and authorized each trustee to act on behalf of the trust.  The trust instrument provided that decedent was entitled to receive the net income of the trust, which was to be paid at least annually, and that he was entitled to use the corpus of the trust for his support, maintenance, health, and general welfare.  The trust instrument provided that the trust property and accumulated income would be divided into as many equal shares as the number of his children when decedent died.

The trust was the partnership's only general partner.

On June 21, 1993, the Texas secretary of state approved and recorded the certificate of the partnership.

D.    Transfer of Assets to the Trust and Partnership

Decedent transferred all of his property (except for his car, personal effects, and a small amount of cash[3]) to the partnership.  Decedent signed deeds individually and on behalf of Mrs. Reichardt's estate transferring his and the estate's interest in 214 Encino, the Routt rental property, and the Nueces and Kleberg Counties property to the trust.  He also signed deeds as trustee transferring those interests in that property to the partnership.  Decedent deposited $20,540 of partnership funds in his personal checking accounts in July and August 1993.  Decedent transferred to the trust, which then transferred to the partnership, (1) investment accounts at Rauscher Pierce Refsnes, Inc. (Rauscher Pierce), on June 29, 1993, and Smith Barney Shearson, Inc. (Smith Barney), on August 16, 1993, (2) the Graham note on August 12, 1993, and (3) $32,871.78 in cash on August 13, 1993.[4]  Before and after the transfers, decedent's children let him control the two investment accounts, the note receivable, and the cash.

Decedent individually, and with William Reichardt and Carolyn Foose as coexecutors of Mrs. Reichardt's estate, transferred the Graham note which had been Mrs. Reichardt's and

---

[3]  Decedent had $2,389 in his personal checking account when he died.

[4]  Decedent transferred the cash directly to the partnership.

decedent's community property from Mrs. Reichardt's estate to the trust. On August 12, 1993, decedent, as trustee, conveyed the Graham note from the trust to the partnership.

On August 13, 1993, decedent transferred $32,871.78 from his two personal accounts at Frost National Bank in San Antonio to a new partnership account at that bank. Decedent received at least $20,540 of the $32,871.78 from rental income from property he had transferred to the partnership.

The Estate of Jessie Dennett made no payments to Mrs. Reichardt's estate or to decedent from rent receipts or property sales distributions in 1993 and 1994 from any of the real property in Cameron County. The Estate of Jessie Dennett paid $30,000 to Mrs. Reichardt's estate on June 19, 1995, as its share of the proceeds from the sale of some real property. This amount was deposited in the partnership's bank account.

Decedent lived at 214 Encino before and after he transferred it to the trust and to the partnership. He paid no rent to the trust or the partnership to use that residence.

E. Decedent's Gift of Limited Partnership Interests to His Children

On October 22, 1993, decedent gave each of his children a 30.4-percent interest in the partnership.[5]

---

[5] Petitioner contends that decedent's children received assignee interests. We need not decide whether they received limited partnership interests or assignee interests because,
(continued...)

F.   Management of the Partnership Assets

Decedent controlled and managed, or allowed the coowners to control and manage, the partnership assets in the same manner both before and after he transferred them to the partnership.  He used the same brokers and managers before and after he transferred the property.  No one except decedent signed partnership checks and documents.  Welch managed the Kleberg County property before and after October 22, 1993, and August 21, 1994.  The executors for the Estate of Jessie Dennett managed the Cameron County property before and after October 22, 1993, and August 21, 1994.  Decedent's relationship to the partnership assets did not change when he conveyed them to the trust and partnership.

Hannah's firm made adjusting entries in the partnership's accounting records in an attempt to classify items of income and expense between decedent and the partnership.  The difference between cash on hand in the partnership account and the amount in the general journal was $8,116 in 1993 and $13,507 in 1994. Hannah's firm assumed that these were the amounts of decedent's personal expenses that the partnership paid in those years.

---

[5](...continued)
under sec. 2036(a), decedent's gross estate includes the assets that he conveyed to the trust and partnership.

G.   Tax Returns

The partnership filed income tax returns (Forms 1065, U.S. Partnership Return of Income) for 1993, 1994, 1995, 1996, and 1997.  The trust filed income tax returns (Form 1041, U.S. Fiduciary Income Tax Return) for 1994, 1995, 1996, and 1997.

In March 1994, decedent and his children, as executors, filed a Federal estate tax return for Mrs. Reichardt's estate in which they reported a gross estate of $1,092,290.  Hannah prepared the return.

Decedent filed a Federal gift tax return for 1993 on April 15, 1994.  In it, he reported that he had given a 30.4-percent interest in the partnership to each of his two children and that each gift had a value of $310,000 as of October 22, 1993.

After decedent died, petitioner obtained an appraisal of decedent's estate and the 1993 gifts.  On Schedule F of the estate tax return, petitioner reported that, when decedent died, his gross estate included a 36.46-percent limited partnership interest in the partnership which had a fair market value of $346,000, and a 1-percent general partnership interest in the partnership which had a fair market value of $13,000.

OPINION

A.   Section 2036(a)

A decedent's gross estate includes the value of property interests transferred by the decedent during his or her lifetime

(other than a bona fide sale for full and adequate consideration) if the decedent retained for life the possession or enjoyment of the property, or the right to the income from the property. See sec. 2036(a).[6] Respondent determined and contends that assets that decedent conveyed to the partnership are includable in his estate under section 2036(a). Petitioner contends that section 2036(a) does not apply because decedent did not retain enjoyment (i.e., economic benefits) of the transferred property and that the transfer was for full and adequate consideration.

B.  Whether Decedent's Gross Estate Includes Assets Held by the Partnership When Decedent Died

We must decide whether section 2036(a) applies to the following property: (1) Decedent's residence at 214 Encino and the Routt rental property; (2) a one-half interest in property in

---

[6]  Sec. 2036 provides as follows:

SEC. 2036(a). General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death--

        (1) the possession or enjoyment of, or the right to the income from, the property, or

        (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

Kleberg and Nueces Counties; (3) a one-third interest in the Cameron and San Patricio property; (4) investment accounts at Rauscher Pierce and Smith Barney Shearson; (5) the Graham note; and (6) cash; i.e., all of the property alleged to have been in the partnership when decedent died (the transferred property).

1. <u>Whether Decedent Retained Possession, Enjoyment, or the Right to the Income From the Transferred Property During His Lifetime</u>

For purposes of section 2036(a), a transferor retains the enjoyment of property if there is an express or implied agreement at the time of the transfer that the transferor will retain the present economic benefits of the property, even if the retained right is not legally enforceable. See <u>Guynn v. United States</u>, 437 F.2d 1148, 1150 (4th Cir. 1971); <u>Estate of McNichol v. Commissioner</u>, 265 F.2d 667, 671 (3d Cir. 1959), affg. 29 T.C. 1179 (1958); <u>Estate of Spruill v. Commissioner</u>, 88 T.C. 1197, 1225 (1987); <u>Estate of Rapelje v. Commissioner</u>, 73 T.C. 82, 86 (1979); <u>Estate of Honigman v. Commissioner</u>, 66 T.C. 1080, 1082 (1976); <u>Estate of Gilman v. Commissioner</u>, 65 T.C. 296, 306-307 (1975), affd. 547 F.2d 32 (2d Cir. 1976); sec. 20.2036-1(a), Estate Tax Regs. (last sentence).

In deciding whether there was an implied agreement, we consider all of the facts and circumstances surrounding the transfer and subsequent use of the property. See <u>Estate of Spruill v. Commissioner</u>, <u>supra</u>; <u>Estate of Rapelje v.</u>

Commissioner, supra at 86-87.  Petitioner bears the burden (which is especially onerous for transactions involving family members) of proving that an implied agreement or understanding between decedent and his children did not exist when he transferred the property at issue to the trust and to the partnership.  See Estate of Skinner v. United States, 316 F.2d 517, 520 (3d Cir. 1963); Estate of Rapelje v. Commissioner, supra at 86; Estate of Hendry v. Commissioner, 62 T.C. 861, 872 (1974).

Petitioner contends that decedent and his children did not have an implied agreement that decedent could continue to use the property after he conveyed it to the partnership.  Petitioner contends that the partnership was formed (a) to curtail decedent's enjoyment of the property transferred to the limited partnership, (b) to prevent him from taking imprudent actions with regard to the property and to settle family disharmony regarding the assets, and (c) to give the children more control over the assets.

a.   Whether Decedent Curtailed His Enjoyment of the Transferred Property

Decedent did not curtail his enjoyment of the transferred property after he formed the partnership.  Nothing changed except legal title.  Decedent managed the trust which managed the partnership.  Decedent was the only trustee to sign the articles of limited partnership, the deeds, the transfer of lien, and any document which could be executed by one trustee on behalf of the

trust.  Decedent was the only trustee to open brokerage accounts or sign partnership checks.  He did not open any accounts for the trust.

Decedent commingled partnership and personal funds.  He deposited some partnership income in his personal account.  He used the partnership's checking account as his personal account. He lived at 214 Encino without paying rent before or after he transferred it to the trust and to the partnership.  Decedent's relationship to the assets at issue remained the same after he transferred them.  If a decedent's relationship to assets remains the same after a transfer as it was before a transfer, the value of the assets may be included in the decedent's gross estate. See sec. 2036(a)(1); Guynn v. United States, supra; Estate of Hendry v. Commissioner, supra at 874; Estate of Schauerhamer v. Commissioner, T.C. Memo. 1997-242.  Here, nothing changed after decedent transferred his interests in the property to the trust and the partnership, except legal title.

Petitioner contends that decedent had no relationship to any of the real property except for 214 Encino and the Routt rental property because Welch and the Estate of Jessie Dennett managed those properties.  We disagree.  Section 2036 applies not only if a transferor retains possession or enjoyment of property, but also if a transferor retains the right to income from the property.  See sec. 2036(a)(1).  We believe that decedent and his

children had an implied agreement that decedent could retain for his lifetime the right to the income from all of the real property that the partnership had when decedent died. Thus, decedent did not curtail his enjoyment of the transferred property after he transferred it to the trust and partnership.

Decedent's estate tax return states that when decedent died he had personal property, a car, and $2,389 cash, and he was owed a $429 Federal income tax refund and a $733 medical refund. Decedent apparently conveyed nearly all of his assets to the trust and partnership.[7] This suggests that decedent had an implied agreement with his children that he could continue to use those assets. Cf. Estate of Paxton v. Commissioner, 86 T.C. 785, 810 (1986).

> b. Whether Decedent Transferred Property to the Trust and Partnership To Prevent Decedent From Treating the Property Imprudently, To Settle Family Disharmony, and To Give Children Control Over Assets

Petitioner contends that decedent formed the partnership to prevent him from treating the transferred property imprudently. We disagree because decedent controlled the partnership, and he had the power to act alone on behalf of the trust which was the

---

[7] Based on the estate tax return for decedent's estate and Hannah's records, respondent alleges that decedent gave about 98 percent of his property to the partnership. Petitioner's only response was that respondent's allegation is not based on the record and is "unsupported by calculations." Respondent's 98-percent estimate appears to be reasonable.

partnership's sole general partner. He alone (1) executed the articles of limited partnership, the deeds, and the transfer of lien; (2) opened the brokerage accounts; and (3) signed all of the partnership checks.

Petitioner emphasizes that decedent's children were concerned that he would give Mrs. Reichardt's property to his lady friend. Despite that, Mrs. Reichardt's will gave decedent the power to consume all of her separate property in which she gave him a life interest. Mrs. Reichardt was sophisticated and capable. We do not think she would have given him such broad power if she had the concern that petitioner alleges. In addition, decedent did not do what petitioner says his children suspected he would do. The facts suggest that this argument of petitioner's is, at best, overstated.

Petitioner also alleges that decedent formed the trust and partnership to give his children control over the assets while he was living. The facts suggest otherwise. Decedent's children, as cotrustees, could have taken, but did not take, actions related to the trust or exercise control over the assets while decedent lived.

### c.   Fiduciary Duties

Petitioner contends that decedent's fiduciary duties as a general partner and trustee precluded him from retaining enjoyment of the assets. We disagree. Decedent's fiduciary

duties did not deter him from continuing to possess and enjoy the house in which he lived or the other assets he conveyed to the partnership. Decedent's children, as cotrustees, did nothing to preclude him from doing so. This suggests that decedent and his children had an implied agreement to allow decedent to continue to enjoy partnership property throughout his life.

Petitioner points out that decedent's children could have revoked his management powers. However, they did not. This suggests that they and decedent had an implied agreement that he could continue to possess, enjoy, and retain the right to income from all of the property that he conveyed.

Decedent used at least $8,116 of partnership funds in 1993 for personal purposes and $13,507 in 1994. Petitioner contends that, at the end of 1993 (before decedent died) and 1994 (after decedent died), Hannah's firm prepared yearend adjusting entries which reclassified items of income and expense as relating to decedent and the partnership. Petitioner contends that the adjusting entries show there was no implied agreement for decedent to continue to enjoy partnership property.

We disagree. The 1993 yearend and 1994 post mortem adjusting entries made by Hannah's firm were a belated attempt to undo decedent's commingling of partnership and personal accounts. There is no evidence that the partnership or decedent transferred

any funds to the other as a result of the adjusting entries.[8] After-the-fact paperwork by decedent's C.P.A. does not refute that decedent and his children had agreed that decedent could continue to use and control the property during his life.

### d. Conclusion

We conclude that decedent and his children had an implied agreement that decedent could continue to possess and enjoy the assets and retain the right to the income from the assets that he conveyed to the partnership during his lifetime.

### 2. Whether Decedent Transferred Property to the Partnership in a Bona Fide Sale for Full and Adequate Consideration

Section 2036(a) does not apply if the transfer of property was part of a bona fide sale in exchange for full and adequate consideration. A bona fide sale is an arm's-length business transaction between a willing buyer and a willing seller. See Wheeler v. United States, 77 AFTR 2d 96-1405, 96-1411, 96-1 USTC par. 60,226 (W.D. Tex. 1996) (value of homestead is included in decedent's gross estate under section 2036(a) in part because there was no bona fide sale among family members).

---

[8] Petitioner did not establish the accuracy of the records that Hannah's firm used to prepare the adjusting entries. The parties stipulated that the adjusting entries summarized other underlying records but not that the underlying records are accurate or complete. Petitioner does not identify all of the records on which the summary was based. One of the underlying records that petitioner produced is another summary that is extremely vague, e.g., $8,116 "Various C.E. Reichardt". Petitioner's reliance on the adjusting entries is misplaced.

Petitioner contends that decedent received full and adequate consideration because he received partnership interests, family disputes were settled, and his children became involved in family assets. We disagree. Decedent's children gave nothing to decedent or the partnership when he transferred property to the trust and the partnership, and they did not involve themselves in the partnership.

Petitioner contends that decedent's children gave consideration to the partnership in the form of their remainder interests. We disagree for reasons stated in paragraph B-4, below.

Petitioner contends that decedent sold the transferred property to the partnership in exchange for partnership interests as consideration. We disagree. Petitioner did not sell the transferred property to the partnership. See Wheeler v. United States, supra.

3.   Comparison of This Case to Schauerhamer v. Commissioner

Petitioner contends that this case is distinguishable from Schauerhamer v. Commissioner, T.C. Memo. 1997-242. We held in Schauerhamer that property transferred to three family limited partnerships was included in the transferor's estate under section 2036(a). This case is similar to Schauerhamer in that, in both cases, the decedents and their children had implied agreements for the decedents to use property that they had

transferred to family limited partnerships established for the benefit of family members.  In Schauerhamer, the children testified that they intended the decedent's relationship with the transferred assets to remain the same after the transfer.  Here, the objective evidence (described above) shows that there was an implied agreement that the decedent could continue to enjoy the property, the children did not deny that there was such an agreement, and we have so found.  The decedents in both Schauerhamer and the instant case commingled funds.  Petitioner cites no significant distinction between Schauerhamer v. Commissioner, supra, and this case.

> 4.  Whether Interests in the Cameron, San Patricio, Nueces, and Kleberg Counties Property Held by the Partnership Are Not Subject to Section 2036 Because Decedent Never Owned Those Interests

Petitioner contends that Mrs. Reichardt's interests in the Cameron, San Patricio, Nueces, and Kleberg Counties property are not subject to section 2036 because they passed directly from her estate to the partnership and decedent never owned any interest in them.  We disagree.

The interests in the Cameron, San Patricio, Nueces, and Kleberg Counties property were Mrs. Reichardt's separate property.  Under her will, a life interest in that property vested in decedent under Texas law when Mrs. Reichardt died.  See Tex. Prob. Code Ann. sec. 37 (West Supp. 1999).  Decedent's life interest included the power to consume all of Mrs. Reichardt's

interest in the property. There are no deeds transferring the Cameron and San Patricio Counties property to the trust and partnership. Thus, the only way interests in those properties could reach the partnership is for decedent to have used the power to consume to convey all of Mrs. Reichardt's interest in those properties to the partnership.

Decedent transferred his interest in the Nueces and Kleberg Counties property to the trust and partnership when he signed deeds on behalf of himself as an individual. Petitioner contends that the deeds establish that Mrs. Reichardt's interest in the Nueces and Kleberg Counties property passed directly from Mrs. Reichardt's estate to the trust and therefore is not included in decedent's estate under section 2036. We disagree. Mrs. Reichardt's interest in the Nueces and Kleberg Counties property vested in decedent as provided under Texas law. See Tex. Prob. Code Ann. sec. 37 (West Supp. 1999).

Petitioner contends that decedent's children gave their remainder interests in Mrs. Reichardt's separate property to the partnership, and thus decedent did not own those interests. We disagree. Decedent's children testified vaguely and unconvincingly about whether they contributed their remainder interests to the partnership. There is no documentary evidence that they did so. We believe that they could not have done so because decedent consumed all of Mrs. Reichardt's separate

property, leaving no remainder for the children.  See Hudspeth v. Hudspeth, 756 S.W.2d 29, 31 (Tex. App. 1988) (life tenant may destroy any contingent interests held by remaindermen if testator expressly gives life tenant power to completely dispose of corpus); Calvert v. Thompson, 339 S.W.2d 685 (Tex. App. 1960) (same).  No document shows that decedent transferred only a life interest in any asset to the trust or partnership.

We conclude that decedent owned and gave to the trust and partnership during his lifetime all of the interests in the Cameron, San Patricio, Nueces, and Kleberg Counties property that had belonged to Mrs. Reichardt when she died.[9]  Thus, those property interests are subject to section 2036.

5.   Conclusion

We conclude that section 2036(a) applies to all of the property that decedent transferred to the partnership.

C.   Amount Included in Decedent's Estate Under Section 2036(a)

To decide the amount included in decedent's estate under section 2036(a), we must decide the value on the date of decedent's death of the property that decedent transferred to the partnership.  James R. Parks (Parks), petitioner's expert who

---

[9]  Decedent's life interest in the Cameron and San Patricio Counties property included the power to convey that property to the partnership.  Decedent did so even though that property remained in the name of the Estate of Jessie Dennett.  See Logan v. Logan, 156 S.W.2d 507, 512 (Tex. 1941); King v. Evans, 791 S.W.2d 531 (Tex. App. 1990).

adopted Goade's estimates for real property, and Francis X. Burns (Burns), respondent's expert, disagree about the value of some of the partnership assets when decedent died.

The following summarizes the parties' positions and our holding about the values of the partnership assets on August 21, 1994, before discounts.

|  | Estimate by | | |
| Assets | Goade & Parks | Burns | Conclusion |
| Bexar County land | $378,900 | $421,000 | $378,900 |
| Kleberg County land | 212,017 | 235,575 | 212,017 |
| Nueces County land | 78,750 | 87,500 | 78,750 |
| Cameron County land | 42,239 | 0 | 42,239 |
| San Patricio County land[1] | -0- | -- | -0- |
| Rauscher Pierce | 672,345 | 672,345 | 672,345 |
| Smith Barney | 119,902 | 119,465 | [2]119,465 |
| Note receivable | 140,594 | 140,594 | 140,594 |
| Cash | 26,072 | 26,072 | 26,072 |
| Liabilities | (35,728) | (35,728) | (35,728) |
| Totals | 1,635,091 | 1,666,823 | 1,634,654 |

[1] Goade estimated that the San Patricio County property had no value because most of it was under water most of the year. Burns did not include the San Patricio County property in his report.

[2] Burns listed the value of each security in the Smith Barney portfolio. In his report, Parks stated a total for Smith Barney, but no information on specific securities because he found them to be unavailable. We accept Burns' estimate.

Parks used the estimates of Goade, a professional real estate appraiser, as the values for the real property. Goade applied a 10-percent fractional interest discount. Burns concluded that no fractional interest discount should be applied to the real property values. Goade is a qualified real estate

appraiser; Burns admitted in his testimony that he is not.  We accept Goade's appraisal.

We conclude that the value of the assets (less liabilities) that decedent transferred to the partnership through the trust is $1,634,654.  This value is included in decedent's estate under section 2036(a).

To reflect the foregoing and concessions of the parties,

<u>Decision will be entered under Rule 155</u>.