T.C. Memo. 2001-250


UNITED STATES TAX COURT


ESTATE OF ELEANOR T.R. TROTTER, DECEASED, WILLIAM F. RECTOR, JR.,
AND ANN RECTOR LEWIS, CO-EXECUTORS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 288-00.              Filed September 21, 2001.


        In 1993, D gratuitously transferred her residence
to an irrevocable trust, naming her daughter as trustee
and her grandchildren as beneficiaries.  D then
continued to occupy the residence without payment of
rent until her death in 1996.

        <u>Held</u>:  There existed an implied understanding that
D would retain possession and enjoyment of the
residence such that the property is includable in her
gross estate under sec. 2036(a)(1), I.R.C.

        <u>Held</u>, <u>further</u>, the value of the residence for
purposes of inclusion in the gross estate is $125,000.


<u>H. Lawrence Yancey</u>, for petitioner.

<u>Elizabeth Downs</u>, for respondent.

MEMORANDUM OPINION

NIMS, <u>Judge</u>:  Respondent determined a Federal estate tax deficiency in the amount of $48,750 for the estate of Eleanor T.R. Trotter (the estate).  The issues for decision are whether, pursuant to section 2036(a), the gross estate of Eleanor T.R. Trotter (decedent) includes the value of a residence transferred to an irrevocable trust and, if so, the proper value of the property for estate tax purposes.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

<u>Background</u>

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  Decedent was a resident of Little Rock, Arkansas, when she died testate in that State on January 31, 1996.  Her will was subsequently admitted to probate in the Probate Court of Pulaski County, Arkansas, Fourth Division. William F. Rector, Jr., and Ann Rector Lewis were named co-executors of the estate and likewise provided a mailing address of Little Rock, Arkansas, at the time the petition in this case was filed.

Decedent was diagnosed with breast cancer in 1986. As a result of surgery and chemotherapy, the cancer went into remission until 1991, when it returned in the form of malignant lymphoma. Decedent waged a continuing battle with the disease until her death from the condition approximately 5 years later.

During 1993, decedent met with her attorney and her children on several occasions for the purpose of planning the passage of decedent's property in the event of her death. Decedent had three adult children from her first marriage to William F. Rector: Ann Rector Lewis, William F. Rector, Jr., and Nancy Rector. Decedent had married her second, and surviving, husband, John F. Trotter, Sr. (Mr. Trotter), several years after William F. Rector's death.

At one such meeting, on December 17, 1993, decedent created an irrevocable trust entitled the Eleanor Trotter Grandchildren Trust (the trust). The named beneficiaries of the trust were "the grandchildren of Eleanor T. Trotter and the issue thereof, if any", and the designated trustee was decedent's daughter, Ann Rector Lewis. As of that date, decedent had five grandchildren, two of whom were adults and three of whom were minors.

The trust instrument provided that, during the term of the trust, the trustee was required to hold, manage, invest, and reinvest the trust property for the benefit of the beneficiaries. The document also authorized the trustee to distribute income and

principal to the beneficiaries as the trustee deemed necessary for the beneficiaries' health, education, support, or maintenance.  The trust instrument then set forth the following with respect to the trust's termination:

> Upon the death of Eleanor T. Trotter, the real estate which is contemplated to be held by this trust (namely Apartment 3-S, Westriver Townhouses Horizontal Property Regime, Pulaski County, Arkansas) shall be maintained for one year during which time John F. Trotter, Sr. (if he remains married to Grantor at the time of her death) shall be entitled to live in such real estate rent free if he pays all occupancy expenses.  Also, he shall have the option within one year of Grantor's death to lease or purchase such real estate at its fair rental rate or fair market value (as the case may be).  If he leases the real estate, the trust shall continue to hold the real estate until the lease terminates.  At the termination of the lease or, if no lease, one year following Grantor's death, the assets then held in trust shall be divided into equal shares for as many grandchildren of Grantor as are then living or who have deceased but left issue surviving. Such shares shall then be distributed directly to the Beneficiaries except to those who are minor and, in such event, * * * [distribution shall be to a trustee managing a trust for the benefit of such minor beneficiary].

The provisions described above regarding the use and distribution of trust assets during and at the termination of the trust were contained in paragraph 2 of the document, labeled "DISPOSITIVE PROVISIONS".  Paragraph 3, "RIGHT OF WITHDRAWAL", next stated, in pertinent part:

> Notwithstanding the provisions of paragraph 2 above, in the calendar year in which the trust is created, the Beneficiaries shall have the power, in their sole discretion, commencing with the date of such creation to withdraw property then belonging to the principal of the trust having a value equal to the

lesser of the (i) the actual amount contributed by each transferor during the calendar year of the creation of the trust, or (ii) $10,000.00 per transferor.  If an additional contribution to principal is made to the trust in a calendar year subsequent to the year in which the trust is created, each grandchild then living shall have the power, in his/her sole discretion commencing with the date of such addition, to withdraw property then belonging to the principal of the trust (including the property constituting the addition) having a value equal at the time of withdrawal to the value of the addition to trust (at the time of such addition) immediately after the time of addition, provided that the individual making the addition shall have the right by a written instrument filed with the Trustee to (i) exclude any individual who would otherwise have a power of withdrawal from exercising such power, (ii) increase or decrease the amount subject to any power of withdrawal except that the amount subject to all withdrawal powers shall not exceed the amount of the addition, or (iii) to change the period during which any power of withdrawal may be exercised.  The Trustee shall notify in writing each person having a withdrawal power [or a legal guardian or parent thereof] advising each such person of the existence of the withdrawal power and such notification shall be made promptly after the creation of the trust or after an addition is made in a calendar year subsequent to the year of creation of the trust. * * * Each such person receiving notification from the Trustee shall have thirty (30) calendar days (or in the case of an addition, such other period determined by the individual making the addition) after receiving such notification to exercise the power by a written instrument delivered to the Trustee * * *

Subsequently, on December 22, 1993, decedent signed a warranty deed transferring title to Apartment 3S of the Westriver Townhouses to the trust.  Such property was the condominium in which decedent and Mr. Trotter resided.  In addition, although Mr. Trotter was not an owner of the condominium, he also signed the warranty deed to release any spousal rights in the property

accruing to him under Arkansas law.  No consideration was paid to decedent or Mr. Trotter in connection with the transfer.

Following the trust's creation, none of the beneficiaries attempted to exercise a right of withdrawal.  Decedent and Mr. Trotter continued to live in the condominium as their primary residence until decedent's death on January 31, 1996.  No rental payments were made by decedent and/or Mr. Trotter to the trust from December 17, 1993, to January 31, 1996.  During this period, decedent paid all occupancy expenses related to the condominium, including maintenance expenses, utilities, property taxes, condominium fees, and premiums for insurance coverage.  No bank account was maintained by or for the trust, and, with the exception of the above-referenced transfer of title to the condominium, the trust did not receive or distribute any cash or other property during this time.

As previously indicated, decedent died on January 31, 1996. Thereafter, for a period of 3 months, Mr. Trotter continued to reside in the condominium.  He made no rental payments to the trust with respect to his occupancy.  During this period, and until at least June of 1996, the trust expended no funds for maintenance, utilities, taxes, or fees; received no further cash or property; and distributed no assets for the benefit of the beneficiaries.

On July 12, 1996, the condominium was sold for a purchase price of $155,000. The proceeds of the sale were distributed by the closing agent to the beneficiaries of the trust, and the trust was terminated.

A Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, was filed for decedent's estate on October 31, 1996. Therein an election was made under section 2032(a) to value decedent's gross estate as of the alternate valuation date. The gross estate so reported did not include any value attributable to the condominium. Following an examination of decedent's estate tax return, which was initiated on October 28, 1997, respondent determined that the condominium was includable in decedent's gross estate at a fair market value of $125,000.

## Discussion

### I. Inclusion of the Condominium in Decedent's Gross Estate

#### A. General Rules

As a general rule, the Internal Revenue Code imposes a Federal tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." Sec. 2001(a). Such taxable estate, in turn, is defined as "the value of the gross estate", less applicable deductions. Sec. 2051. Section 2031(a) then specifies that the gross estate

comprises "all property, real or personal, tangible or intangible, wherever situated", to the extent provided in sections 2033 through 2045.

Section 2033 broadly states that "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." Sections 2034 through 2045 then explicitly mandate inclusion of several more narrowly defined classes of assets. Among these specific sections is section 2036, which reads in pertinent part as follows:

> SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.
>
> (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death--
>
> > (1) the possession or enjoyment of, or the right to the income from, the property, or
> >
> > (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

Regulations similarly explain that the gross estate under section 2036 includes the value of property if the decedent retained the "use, possession, right to the income, or other enjoyment of the transferred property". Sec. 20.2036-1(a)(i), Estate Tax Regs.

Given the language used in the above-quoted provisions, it has long been recognized that section 2036 "describes a broad scheme of inclusion in the gross estate, not limited by the form of the transaction, but concerned with all inter vivos transfers where outright disposition of the property is delayed until the transferor's death." Guynn v. United States, 437 F.2d 1148, 1150 (4th Cir. 1971). Accordingly, courts have emphasized that section 2036(a)(1) is phrased in the alternative, such that inclusion is mandated, absent full consideration, if the transferor retained either actual "possession or enjoyment" or a "right to the income". Estate of McNichol v. Commissioner, 265 F.2d 667, 670 (3d Cir. 1959), affg. 29 T.C. 1179 (1958); Estate of Honiqman v. Commissioner, 66 T.C. 1080, 1082 (1976).

As used in section 2036(a)(1), the term "enjoyment" has been described as "synonymous with substantial present economic benefit." Estate of McNichol v. Commissioner, supra at 671. In the context of real property, "'possession' and 'enjoyment' have been interpreted to mean 'the lifetime use of the property.'" Estate of Maxwell v. Commissioner, 3 F.3d 591, 593 (2d Cir. 1993)(quoting United States v. Byrum, 408 U.S. 125, 147 (1972)), affg. 98 T.C. 594 (1992).

Such possession or enjoyment of transferred property is retained for purposes of section 2036(a)(1) where there is an express or implied understanding to that effect among the parties

at the time of the transfer, even if the retained interest is not legally enforceable.  Estate of Maxwell v. Commissioner, supra at 593; Guynn v. United States, supra at 1150; Estate of Reichardt v. Commissioner, 114 T.C. 144, 151 (2000); Estate of Rapelje v. Commissioner, 73 T.C. 82, 86 (1979); Estate of Honigman v. Commissioner, supra at 1082; Estate of Linderme v. Commissioner, 52 T.C. 305, 308 (1969).  Regulations likewise provide that "An interest or right is treated as having been retained or reserved if at the time of the transfer there was an understanding, express or implied, that the interest or right would later be conferred."  Sec. 20.2036-1(a), Estate Tax Regs.

The existence or nonexistence of such an understanding is determined from all of the facts and circumstances surrounding both the transfer itself and the subsequent use of the property. Estate of Reichardt v. Commissioner, supra at 151; Estate of Rapelje v. Commissioner, supra at 86.  Traditionally, the burden of disproving the existence of an agreement has rested on the estate, and this burden has often been characterized as particularly onerous in intrafamily situations.  Estate of Maxwell v. Commissioner, supra at 594; Estate of Reichardt v. Commissioner, supra at 151-152; Estate of Rapelje v. Commissioner, supra at 86.  Furthermore, although recently enacted section 7491 may operate in certain scenarios to place the burden on the Commissioner, the statute is effective only for

court proceedings that arise in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 685, 727. Since the parties here stipulated that examination of the estate tax return at issue was initiated on October 28, 1997, section 7491 is inapplicable, and the estate's references thereto on brief are misplaced. The burden therefore remains on the estate to establish that respondent's determination is erroneous.

B. Existence of Consideration

In accordance with the foregoing standards, the value of the condominium must be included in decedent's gross estate if she retained an interest therein of a type described in section 2036(a), unless she received adequate and full consideration for the transfer at issue. As a threshold matter, we note that both parties have proposed as a finding of fact that no consideration was paid for the transfer. Since nothing in the record establishes that the conveyance of title was other than gratuitous, we accept the proposed finding as a concession by the estate. We also observe that even if decedent's subsequent rent-free occupancy is taken into account in this calculus, it is self-evident that the value of a life estate is not the

equivalent of the value of an unencumbered estate. Accordingly, we turn to whether decedent retained an interest within the meaning of section 2036(a).

C. Existence of a Retained Interest

1. Contentions of the Parties

Respondent contends that the condominium is includable in decedent's gross estate on the grounds that decedent retained possession and enjoyment through an implied or tacit agreement. Respondent maintains that all of the circumstances relating to the purported conveyance of the property and decedent's continued occupancy show an implicit arrangement bringing the residence within the purview of section 2036(a)(1).

Conversely, the estate avers that the condominium is not subject to inclusion in decedent's gross estate under section 2036(a). It is the estate's position that decedent relinquished all legal and equitable rights to the property in 1993. In support of this position, the estate emphasizes the following facts: (1) Title was transferred to the trust; (2) the trustee was bound by the trust terms and by fiduciary duties under State law to hold and manage the property for the benefit of the beneficiaries; (3) the beneficiaries were given an immediate right to withdraw trust assets and thereby to defeat all other rights; and (4) decedent gave up the economic benefit of being able to generate cash by selling or borrowing against the

property.  The estate thus concludes that decedent "had possession of the Real Estate as a tenant and she paid for the same", based on her payment of all occupancy costs.  We disagree for the reasons explained below.

2.  Analysis

The totality of the circumstances presently before us requires a conclusion that an implied understanding existed between decedent and her family members that she would retain possession and enjoyment of her condominium within the meaning of section 2036(a)(1).  The facts of this case are not such that it can be distinguished in any material way from the substantial body of case law mandating inclusion in the context of continued occupancy of a personal residence.  As we shall detail infra, the principal factors relied upon in such opinions are equally in evidence here, and additional indicia unique to decedent's situation buttress the adverse inference.

To begin with, we and other courts have characterized the continued exclusive possession by the donor and the withholding of possession from the donee as particularly significant factors. Guynn v. United States, 437 F.2d at 1150;  Estate of Rapelje v. Commissioner, 73 T.C. at 87; Estate of Linderme v. Commissioner, 52 T.C. at 309.  Here, too, decedent continued to occupy the

condominium after the transfer of title to the exclusion of the donees or anyone else whose status stemmed from a superior legal right to the property.

The further circumstance that a donor's occupancy occurred without payment of rent to the donee has also been repeatedly highlighted.  Guynn v. United States, supra at 1150;  Estate of Rapelje v. Commissioner, supra at 88; Estate of Honigman v. Commissioner, 66 T.C. at 1081.  As this Court has opined, "continued rent-free, exclusive occupancy of * * * [the residence] for life constitutes a substantial present economic benefit akin to his renting * * * [the property] to a third party and keeping the rent therefrom."  Estate of Baggett v. Commissioner, T.C. Memo. 1991-362; see also Estate of Linderme v. Commissioner, supra at 309.  Again, such an analogy is present in this case as well.  We also note in this connection that the estate's focus on an ability to sell or borrow against the property as a principal economic benefit finds no support in the reported decisions.  Since the decedent in nearly every case has transferred legal title, a consequent legal disability from transacting based on the property must be assumed.  Yet the courts have not mentioned this deficiency and thus have apparently deemed it without moment in the face of rent-free occupancy.

Moreover, contrary to the estate's intimations, payment of occupancy expenses such as utilities, taxes, and insurance has not been considered a substitute for rent but rather has been seen to weigh in favor of finding a retained interest. Guynn v. United States, supra at 1150; Estate of Rapelje v. Commissioner, supra at 88; Estate of Kerdolff v. Commissioner, 57 T.C. 643, 649 (1972). In sum, courts have been unwilling to decide that no interest was retained within the meaning of section 2036(a)(1) where objective evidence has shown that the decedent's relationship in fact to the property, beyond the transfer of bare legal title, remained largely unchanged. Guynn v. United States, supra at 1150; Estate of Reichardt v. Commissioner, 114 T.C. at 152; Estate of Rapelje v. Commissioner, supra at 88. Such is clearly true here.

As a corollary to the preceding principle, courts have also considered significant the lack of efforts on the part of a donee to sell, lease, use, or otherwise take steps to obtain any economic return from the property. Estate of Maxwell v. Commissioner, 3 F.3d at 594; Guynn v. United States, supra at 1150; Estate of Rapelje v. Commissioner, supra at 88. Additionally, the practical unlikelihood of family members' ousting an elderly relative has been acknowledged. See Guynn v. United States, supra at 1150; Estate of Honigman v. Commissioner, supra at 1083; Estate of Kerdolff v. Commissioner, supra at 650.

Once more, the facts before us fit this pattern as well.  The trustee did not even open a bank account for the trust; hence, we are hard-pressed to infer that the trustee intended to manage the property so as to achieve an economic benefit for the beneficiaries at any time prior to decedent's death.

Furthermore, we find the particular terms of the trust instrument at issue here to be highly supportive of an implied arrangement that decedent would retain possession of the condominium.  Specifically, we emphasize that the express terms of the agreement granted Mr. Trotter a right to possess the property for a period following decedent's death.  We believe that there would have been little, if any, reason to include such language absent an understanding that decedent and her husband would be living in the home at the time of her death.

Moreover, we are satisfied that the logical conclusion to be drawn from these terms is not negated by the withdrawal provisions upon which the estate so heavily relies.  The numerous indicia discussed above are equally supportive of an implied understanding that the withdrawal rights would not be exercised, an interpretation buttressed by the awareness that the beneficiaries were decedent's grandchildren (and three of the five were minors).  We cannot blind ourselves to the reality of the family relationships involved, and the estate has failed to show that the withdrawal rights were anything more than a paper

formality without intended economic substance. In addition, such construction is strengthened still further by fact that the trust's having been funded solely with a single piece of real estate would have made any attempt to effectuate a withdrawal complex and burdensome at best. While it is not entirely clear from the document how the provision would operate in this circumstance, we doubt that any beneficiary would seriously have contemplated forcing the trustee to sell the home so that he or she could collect $10,000.

Lastly, we observe that the four cases cited by the estate in support of its position do not lead us to reach a result different from that which appears compelled by the facts before us. In particular, the estate cites United States v. Byrum, 408 U.S. 125 (1972); Estate of Wall v. Commissioner, 101 T.C. 300 (1993); Estate of Beckwith v. Commissioner, 55 T.C. 242 (1970); and Estate of Chalmers v. Commissioner, T.C. Memo. 1972-158. However, the principles that the estate asks us to glean from these cases seem to be drawn primarily from the courts' discussions of section 2036(a)(2), rather than section 2036(a)(1). We do not dispute that courts have construed the term "right" as used in section 2036(a)(2) to mean an ascertainable and legally enforceable power. See United States v. Byrum, supra at 136; Estate of Wall v. Commissioner, supra at 310-311. Nor do we disagree that the "practical considerations"

advanced by the Commissioner may at times have been rejected as insufficient for inclusion under either paragraph of section 2036(a). See Estate of Beckwith v. Commissioner, supra at 248-251. Nonetheless, we are firmly convinced that the cases which deal with retained "possession or enjoyment" of a residence for purposes of section 2036(a)(1), which the estate's cited cases do not, establish the relevant standards and must govern our decision here. Accordingly, the estate's reliance on these legally and factually distinguishable opinions is misplaced.

Therefore, in light of all the facts and circumstances present in this case, we hold that decedent retained possession and enjoyment of the condominium within the meaning of section 2036(a)(1). The value of the condominium must be included in her gross estate.

## II. Valuation of the Condominium

Regulations promulgated under section 2036 provide the following with regard to the value to be included in the gross estate pursuant to that statute:

> If the decedent retained or reserved an interest or right with respect to all of the property transferred by him, the amount to be included in his gross estate under section 2036 is the value of the entire property, less only the value of any outstanding income interest which is not subject to the decedent's interest or right and which is actually being enjoyed by another person at the time of the decedent's death. If the decedent retained or reserved an interest or right with respect to a part only of the property transferred by him, the amount to be included in his gross estate

> under section 2036 is only a corresponding proportion
> of the amount described in the preceding sentence.* * *
> [Sec. 20.2036-1(a), Estate Tax Regs.]

Thus, since decedent retained possession and enjoyment of her entire residence, the full value of the condominium is includable in her gross estate.

The standard for ascertaining such value is then set forth in section 20.2031-1(b), Estate Tax Regs. Specifically, property is included in the gross estate at its "fair market value", defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Id. The date with respect to which the asset is valued is either the date of death or, if the alternate valuation method under section 2032 is elected, the date prescribed in that section. Sec. 20.2031-1(b), Estate Tax Regs. As pertinent here, section 2032(a)(1) states that property disposed of within 6 months of the decedent's death is valued as of the date of its disposition.

Decedent's condominium was sold approximately 5-1/2 months after her death for $155,000. Respondent determined a value of $125,000 in the notice of deficiency. The estate has offered no further evidence and no argument on the issue of valuation. We

therefore sustain respondent's determination.  We hold that the condominium is includable in decedent's gross estate at the determined value of $125,000.

To reflect the foregoing,

Decision will be entered
under Rule 155.